UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| LAURA N. WOODS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | 5:18-cv-658-JMH |
| | ) | |
| STANDARD FIRE INSURANCE | ) | |
| COMPANY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
|     Defendant. | ) | |
| | ) | |

\*\*\*

Laura Woods, a Kentucky resident, was seriously injured in a two-vehicle accident in Kentucky while driving a vehicle belonging to her father, Dawson Newberry. After settling with the other driver's insurance company, Woods sought under-insured motorist ("UIM") benefits from an insurance policy that was procured by Newberry, a Connecticut resident. The policy was procured in Connecticut from Standard Fire, a Connecticut insurance company.

The Standard Fire insurance policy, which does not contain a choice of law provision, includes a setoff provision, which requires that any benefits received from other sources be deducted or set off from the amount of UIM benefits that may be recovered under the policy. As such, Standard Fire offered to provide UIM benefits to Woods, but only after setting off the amount that Woods had already recovered from other sources.

1

At present, the threshold dispute between the parties is whether Connecticut or Kentucky law will apply to interpretation of an insurance policy issued by Standard Fire. In determining which jurisdiction's law should apply to the policy while sitting in diversity, this Court must apply the forum state's choice of law analysis.

Under Kentucky's most significant relationship test, Connecticut has the most significant relationship with the insurance policy at issue here. Still, notwithstanding the outcome of the most significant relationship analysis, the Kentucky public policy exception applies and requires application of Kentucky law because setoff provisions in insurance policies violate the public policy of the Commonwealth of Kentucky; and, as a result, application of Connecticut law would result in enforcement of a contractual provision that contravenes the public policy of Kentucky. As a result, Standard Fire's motion for summary judgment [DE 8] is **DENIED** and Wood's motion for partial summary judgment [DE 9] is **GRANTED**.

## I. Factual and Procedural Background

Plaintiff Laura Woods, a Kentucky resident, was seriously injured in a two-vehicle collision in Woodford County, Kentucky. [DE 9-1 at 2, Pg ID 115]. Woods incurred expenses in excess of $250,000 as a result of the accident. [*Id.*].

The driver of the other vehicle involved in the accident was insured by USAA. [*Id.*]. Woods settled her personal injury claim with USAA for $50,000. [DE 8-1 at 2, Pg ID 54].

At the time of the accident, Woods was driving a vehicle owned by her father, Dawson Newberry, a Connecticut resident. [DE 9-1 at 3, Pg ID 116]. The vehicle was covered by an insurance policy written by the Defendant, Standard Fire Insurance Company. [*Id.*]. Woods received $11,000 in no-fault benefits from Standard Fire. [*Id.*].

Standard Fire is incorporated in Connecticut and has its principal place of business in Hartford, Connecticut. [DE 1 at 2, Pg ID 2]. Newberry was the named insured on the Standard Fire insurance policy. [*See* DE 8-5]. Woods is not a named insured or a scheduled driver under the Standard Fire policy. [*See id.*]. Even so, the Standard Fire policy territory included the "United States, its territories or possessions; Puerto Rico; or Canada." [DE 8-5 at 16, Pg ID 193].

In September 2018, Woods demanded $100,000 from Standard Fire, which was the policy limit for UIM benefits under the Standard Fire policy. [DE 9-1 at 3, Pg ID 116].

In response, Standard Fire offered to settle Woods's claim for $39,000 based on a limit of liability or setoff provision in the policy. [DE 9-4]. Specifically, the relevant setoff provision in the policy says: "The Limit of liability will be reduced by all

3

sums: [] Paid to 'insureds' because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." [DE 8-5 at 24, Pg ID 201]. The policy also states:

> No one will be entitled to receive duplicate payments for the same elements of loss under this Coverage Section and:
>
> 1. Any other Coverage Section of part of this policy; or
>
> 2. Any other personal auto policy issued to you by us or any of our affiliates.

[*Id.*]. The policy contains no choice of law provision.

Woods refused Standard Fire's offer and filed suit in Fayette Circuit Court, seeking a declaration of benefits under the policy and bringing claims for breach of contract, violations of the Kentucky PIP statute and Motor Vehicle Reparations Act ("MVRA"), and bad faith. [DE 1-2]. The action was removed to this Court based on diversity of citizenship jurisdiction. [DE 1].

The parties agreed to bifurcate the bad faith claims from the other claims in the action and to stay discovery until the Court could resolve anticipated motions for summary judgment on the amount of UIM benefits payable under the policy. [DE 6]. The Court granted the request to bifurcate and stay discovery. [DE 7].

Subsequently, the parties filed cross motions for summary judgment. [DE 8; DE 9]. These motions have been fully briefed and are ripe for review.

4

## II. Standard of Review

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted). The Court construes the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

In a diversity action, the Court must apply the substantive law of the forum state and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996); *Hanna v. Plumer*, 380 U.S. 460, 465-66 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014). Thus, "where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the

parties, the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court." *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945). Ultimately, to determine whether summary judgment should be granted here, the Court must look to Kentucky state law and court decisions, as well as other relevant materials. *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

### III. Analysis

The principle dispute between the parties at present is whether the law of Connecticut or Kentucky applies to the interpretation of the Standard Fire policy. If Connecticut law applies, the setoff provision may apply, and, if so, Woods will only be entitled to recover up to $39,000 in UIM benefits under the policy. Alternatively, if Kentucky law applies, the setoff provision will be prohibited by the Kentucky MVRA, and Woods may recover up to the full $100,000 policy limit for UIM benefits.

A federal court sitting in diversity must apply the conflict of law rules of the forum state. *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4-5 (1975); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).

Under Kentucky law, "an insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms." *State Farm Mut. Ins. Co. v. Fireman's Fund Am. Ins. Co.*, 550 S.W.2d 554, 557

6

(Ky. 1977); *see Masler v. State Farm Mut. Auto. Ins. Co.*, 894 S.W.2d 633, 635–36 (Ky. 1995).

As such, under Kentucky law, to test to determine which jurisdiction's substantive laws should govern interpretation of a contract is "which state has the most significant relationship to the transaction and the parties." *Lewis v. Am. Family Ins. Grp.*, 555 S.W.2d 579, 581-82 (Ky. 1977) (quoting Restatement (Second) of Conflict of Laws § 188 (1971)). Still, Kentucky courts to not "apply the law of another state if that state's law violates a public policy as declared by the Kentucky legislature or courts." *State Farm Mut. Auto. Ins. Co. v. Marley*, 151 S.W.3d 33, 35 (Ky. 2004).

The parties agree that the Kentucky most significant relationship test should be used to determine whether Connecticut or Kentucky law governs interpretation of the insurance policy at issue. The parties diverge, however, on the proper application of the most significant relationship test to the relevant facts. Additionally, the parties disagree on whether Kentucky public policy requires application of Kentucky law, notwithstanding the outcome of the most significant relationship test analysis.

### A. Most Significant Relationship Test

When making a determination under the most significant relationship test, this Court must consider certain factors, including "the place or places of negotiating and contracting; the

7

place of performance; the location of the contract's subject matter; and the domicile, residence, place of incorporation and place of business of the parties." *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878-79 (Ky. 2013) (citing Restatement (Second) of Conflict of Laws § 188(2) (1971)). These factors "need not be given equal weight in every circumstance, nor are they intended to be exclusive. They [] are relatively elastic, and in some cases equivocal." *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 606 (6th Cir. 1996). These factors are analyzed below.

**(1) Place of Negotiating and Contracting**

The place of negotiating and contracting weighs in favor of applying Connecticut law. The UIM benefits at issue in this case arise from the interpretation of an insurance policy issued by Standard Fire, a Connecticut company, to Dawson Newberry, a Connecticut resident. The insurance policy was procured in Connecticut, through a Connecticut insurance agent, and a Connecticut resident is the only named insured listed on the policy.

Ultimately, the insurance policy at issue in this action was issued in Connecticut, to a Connecticut resident, by a Connecticut insurance company. As a result, the place of negotiating and contracting was solely in Connecticut, and the first factor weighs in favor of applying Connecticut law.

**(2) Place of Performance**

The place of performance factor weighs in favor of application of Kentucky law. The accident giving rise to this insurance coverage dispute occurred in Kentucky between Kentucky residents. Additionally, the injured party seeking UIM benefits under the policy, Laura Woods, is a Kentucky resident.

Woods argues that this factor should be given the most weight. Woods makes much of the fact that the accident occurred in Kentucky between Kentucky residents. Ultimately, Woods contends that the place of performance factor is the most important and argues that since "[a]ll of the substantive facts concerning the underlying personal injury claim, including physical evidence and witnesses, are located in Kentucky," that Kentucky law should apply. [DE 9-1 at 11, Pg ID 124].

But the place of performance factor is just one of many factors that courts consider when applying Kentucky's most significant relationship test. While this factor may weigh heavily in some circumstances, it cannot be viewed in a vacuum at the expense of considering the impact of other factors.

In sum, since the accident giving rise to the personal injury claim occurred in Kentucky and involved a Kentucky resident, the second factor, place of performance, weighs in favor of applying Kentucky law to interpretation of the insurance policy.

**(3) Location of the Contract's Subject Matter**

The primary location of the insured risk under the policy was in Connecticut. As such, the third factor—location of the contract's subject matter—weighs in favor of applying Connecticut law.

The named insured, Dawson Newberry, represented to Standard Fire that the covered Toyota Tacoma would be used for pleasure and would be located and garaged in Sandy Hook, Connecticut. [DE 9-2 at 2, Pg ID 145]. Furthermore, the only named insureds are residents of Connecticut. [*Id.*]. Also, it appears that all policy premiums were paid in Connecticut. As a result, the principal location of the contract's subject matter—the covered risk—is in Connecticut because the insured represented that the vehicle would be primarily located and used in Connecticut.

It is true that policy was nationwide in scope and contemplated that coverage would be provided for accidents that occurred in another state. Even so, the primary location of the insured risk was still Connecticut. The declarations on the insurance policy stated that the covered vehicles would be primarily used and garaged in Connecticut. Additionally, the named insured and listed drivers are all Connecticut residents. As a result, since the primary location of the contract subject matter—liability insurance for certain covered vehicles—was in

10

Connecticut, the third factor weighs in favor of applying Connecticut law.

**(4) Domicile, Residence, Place of Incorporation, and Place of Business of the Parties**

Finally, the fourth factor weighs in favor of applying Connecticut law. All the parties to the insurance policy are located in Connecticut. The named insured is a Connecticut resident. Additionally, the insurance company is incorporated in Connecticut and has its primary place of business in Connecticut.

When "applying the most significant relationship test, Kentucky courts have recognized that in most cases the law of the residence of the named insured will determine the scope of the coverage." *Poore v. Nationwide Mut. Ins. Co.*, 208 S.W.3d 269, 271 (Ky. Ct. App. 2006) (citing cases). So too here. All parties to the insurance policy are either residents of or incorporated and located in Connecticut. As a result, the fourth factor weighs in favor of applying Connecticut law.

### B. Public Policy Exception

Notwithstanding the outcome of the most significant relationship test, Woods contends that Kentucky law should apply as a matter of public policy. It is true that Kentucky courts may refuse to apply the law of another jurisdiction when application of said law will result in enforcement of contractual provisions that contravene Kentucky's public policy. *See Marley*, 151 S.W.3d

11

at 35 (Kentucky courts do not "apply the law of another state if that state's law violates a public policy as declared by the Kentucky legislature or courts."). Basically, when engaging in a choice-of-law analysis, Kentucky courts will disregard the outcome of the most significant relationship test when another jurisdiction's law violates a public policy as declared by Kentucky courts or the Kentucky General Assembly.

Woods claims that Kentucky's public policy, which disfavors the type of setoff provisions like the one found in the Standard Fire policy, justifies application of Kentucky law. On that point, Woods is correct.

The Kentucky General Assembly has established that setoff provisions, like the one in the Standard Fire policy, violate the public policy of the Commonwealth of Kentucky. The 1988 revision to KRS § 304.39-320 reflects a broad view of UIM coverage and makes UIM coverage available up to the policy limit of the insured. *See* KRS § 304.39-320(2), (5). As a result, the Kentucky General Assembly has clearly stated that setoff provisions pertaining to UIM benefits violate the public policy of Kentucky.

The Kentucky Supreme Court has also recognized that setoff provisions pertaining to UIM benefits violate the public policy of the Commonwealth, stating:

> Our previous version of KRS 304.39–320 clearly was an example of the narrow view of UIM coverage. The 1988 revision of the statutory language, however, transformed

12

> the statute into a representation of the broad view. The effect of the 1988 revision was to make available the policy limit of UIM coverage to the insured. *See Coots v. Allstate Insurance Co.*, 853 S.W.2d 895, 900 (Ky. 1993) (stating that the "1988 change in statutory language eliminated the offset problem"). As the 1988 revision reflects a public policy of broad UIM coverage, the purpose of which is to provide full recovery for the insured, *we now hold that an insurance carrier cannot set off workers' compensation benefits against the policy's face amount of UIM coverage. To do so would be to violate the public policy of this Commonwealth as clearly expressed by the legislative revision of KRS § 304.39–320.*

*Philadelphia Indem. Ins. Co. v. Morris*, 990 S.W.2d 621, 627 (Ky. 1999) (emphasis added). Of course, in *Morris* the Kentucky Supreme Court was dealing with a case that involved set off based on workers' compensation benefits, not set off due to money paid under another insurance policy. Even so, the reason for the set off is immaterial under Kentucky law. At bottom, Kentucky law prohibits the set off or deduction of any previously received benefits from the amount of UIM coverage available under an insurance policy. As a result, the Kentucky Supreme Court has also clearly explicated that setoff provisions pertaining to UIM coverage violate the public policy of Kentucky.

Moreover, another judge of the Eastern District of Kentucky determined that Kentucky's public policy exception applied in a case with strikingly similar facts. *See Schardein v. State Auto. Ins. Co.*, 2012 WL 6675130 (E.D. Ky. 2012). In *Schardein*, the court was tasked with determining which jurisdiction's law would apply

13

to interpretation of an insurance policy that was issued in Indiana, to Indiana residents, for vehicles that were to be primarily garaged and used in Indiana. *Id.* at *1. The accident at issue occurred in Kentucky and involved a Kentucky resident who was not driving one of the vehicles listed under the insurance policy but was covered under the policy as a "family member." *Id.* The court acknowledged that the named insureds were Indiana residents and that the policy was issued in Indiana. *Id.* Still, the court held that Kentucky law applied to interpretation of the contract because the injured party was a Kentucky resident and his estate was entitled to the protections of Kentucky law based on the public policy exception. *Id.* at *2.

The application of Kentucky law in this case is also bolstered by the fact that the accident giving rise to coverage occurred in Kentucky and a Kentucky resident is seeking benefits under the Standard Fire policy. While the residency of the party seeking benefits is not dispositive in the most significant relationship analysis, it is an important factor when considering whether the public policy exception applies. Kentucky has a significant interest in protecting its residents when they are injured within Kentucky's borders. As such, the public policy exemption should apply under Kentucky law in this case.

Standard Fire contends that a "blanket" public policy exception for application of setoff provisions pertaining to UIM

benefits is unfair because Woods was a "second-class UIM insured[] who [was] unknown to the insurer and who played no role in forming the policy at issue." [DE 11 at 6, Pg ID 238]. It is true that Laura Woods was not a named insured or listed as a scheduled driver on the Standard Fire policy.

Still, this is not a case where an accident in Kentucky involving a Kentucky resident is completely unknown or unfathomable to the insurer. Woods was covered under the Standard Fire policy because she was driving one of the covered vehicles, which was owned by her father, and the policy provided coverage which was nationwide in scope. Ultimately, Standard Fire could have foreseen that the named insured would drive his car into Kentucky or loan it to someone driving in Kentucky that might be involved in an accident in Kentucky. Since an accident in Kentucky involving a Kentucky resident, while perhaps unlikely, was foreseeable to the insurer, it cannot be said that application of Kentucky law is unfair based on these facts.

In some instances, application of Kentucky's public policy exception may be unfair where an injured party is completely unknown or unforeseen under the provisions of the insurance policy. But this is not such a case. Again, while it was most likely that a covered accident would occur in Connecticut since the vehicles were to be primarily used and garage in Connecticut, it is certainly possible that an accident would occur in another state.

15

Finally, the Court acknowledges that application of the public policy exception in this case swallows the most significant relationship test analysis, which points in favor of application of Connecticut law. Still, while sitting in diversity, this Court is tasked with applying the choice of law provisions of the forum state and resolving this threshold issue in the same way as it would likely be resolved by the Kentucky Supreme Court. Kentucky courts have demonstrated a willingness to disregard the most significant relationship test and use the public policy exception in the choice of law analysis when a contractual provision clearly violates the Commonwealth's public policy. Whether that law is good policy as a general matter is the concern of the Kentucky General Assembly and Kentucky courts, not this federal court sitting in diversity.

In sum, the Kentucky public policy exception requires application of Kentucky law to the Standard Fire policy because the Kentucky legislature, Kentucky courts, and federal courts applying Kentucky law in similar circumstances have all recognized that setoff provisions pertaining to UIM benefits in insurance policies violate the public policy of the Commonwealth of Kentucky.

Even when viewing the facts in the light most favorable to the Defendant, the relevant facts are undisputed. For instance, it is undisputed that the accident giving rise to coverage in this matter occurred in Kentucky and involved a Kentucky resident who

16

was seriously injured. Moreover, even though Laura Woods is not a named insured and is not listed as a scheduled driver on the policy, it is further undisputed that Woods is covered under the policy because she was driving a covered vehicle and that the policy provides a coverage territory that is nationwide in scope. As such, the question of which jurisdiction's law applies to interpretation of the policy is purely a question of law.

When engaging in a choice of law analysis, Kentucky courts will not apply the law of a foreign jurisdiction when application of that law results in enforcement of a contractual provision that violates the public policy of Kentucky. Here, notwithstanding the outcome of the most significant relationship analysis, the Kentucky legislature and Kentucky courts have recognized that setoff provisions in insurance policies violate the public policy of Kentucky. As a result, Kentucky law applies to interpretation of the contract based on the Kentucky public policy exception.

### C. Setoff Provision Under Kentucky Law

Under Kentucky law, the setoff provision in the Standard Fire policy is invalid. *See* KRS § 304.39-320. As such, having found that Kentucky law applies to the interpretation of the Standard Fire policy at issue here, the setoff provision in the Standard Fire policy is invalid.

17

## IV. Conclusion

For the forgoing reasons, **IT IS ORDERED** as follows:

(1) Defendant's motion for summary judgment [DE 8] is **DENIED**; and;

(2) Plaintiff's motion for partial summary judgment [DE 9] is **GRANTED**.

This the 14th day of August, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge