UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| LAURA N. WOODS, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 5:18-CV-658-JMH-MAS |
| v. ) | |
| ) | |
| THE STANDARD FIRE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

This case is before the Court on Defendant The Standard Fire Insurance Company's ("Standard Fire") Motion for a Protective Order [DE 29] and Motion to Modify the Court's December 23, 2019 Order [DE 30]. The Court previously held a discovery dispute conference call to resolve the issues raised in Standard Fire's motions, made a provisional ruling, and gave the parties leave to file formal motions. The motions are fully briefed and ripe for decision.

**I.   BACKGROUND**

This case arises from a motor vehicle accident. Plaintiff Laura N. Woods ("Woods") (a Kentucky resident) was driving a truck owned by her father (a Connecticut resident) and insured by Standard Fire when she was injured in a collision in Kentucky. Woods settled with the tortfeasor and then pursued an underinsured motorist (UIM) claim from Standard Fire. Before Woods filed suit, Standard Fire made a settlement offer in which Standard Fire offset the UIM coverage limits as permitted under Connecticut law. Woods disagreed, claiming Kentucky law should be applied, which would disallow offsets to the UIM coverage. When the parties could not

1

reach a resolution, Wood filed suit alleging breach of contract, a claim for UIM benefits (Counts I and II), and several "extra-contractual" claims, including statutory and punitive damages (Counts III through VI). [Complaint, DE 1]. The Court will refer to these extra-contractual claims collectively as the bad faith claims.

The Court bifurcated the case, including discovery, into the contract and extra-contractual claims; the parties have since settled the contract claims and are now proceeding on the bad faith claims. Woods requested the assistance of the magistrate judge when the parties were unable to resolve Standard Fire's objections to the following Interrogatories and Requests for Production of Documents:

> INTERROGATORY NO. 3: Please give a concise statement of the facts relied upon which would support your contention that you did not violate your duties of good faith by attempting to set-off Plaintiff's underinsured motorist benefits by $61,000. Identify how you reached all conclusions that these decisions were reasonable and in good faith.
>
> INTERROGATORY NO. 9: Identify every communication between you and any of your employees, or between any of your employees, independent contractors or independent adjusters or attorneys, which relate to the subject collision, the handling of Plaintiff's underinsured motorist claim, and the decision to apply the $61,000 set-off to Plaintiff's underinsured motorist benefits.
>
> REQUEST NO. 1: Produce any and all documents used to support your answer to Interrogatory No. 3.
>
> REQUEST NO. 5: Produce any and all documents used to support your answer to Interrogatory No. 9.
>
> REQUEST NO. 10: Please produce a copy of the entire claim file related to Plaintiff's claim for underinsured motorist benefits.
>
> REQUEST NO. 11: Please produce any and all documents that support your legal analysis in applying the set-off provision to Plaintiff's claim that is the central issue in this case.

[DE 29-1 at Page ID # 351-52]. Standard Fire categorized the disputed documents (with Bates stamp numbers) as follows:

    1.) In-house counsel's legal opinion on coverage issues: 213-216.

    2.) Communications with trial counsel (up to October 2, 2019): 1069-73; 1080-83; 1096-97; 1100-01; 1105; 1109; 1110-20; 1121-22; 1134; 1197-98; 1264-65; 1276-77; 1284; 1285-86; 1287-88; 1312-15; 1334-36; 1342-46; 1348-51; 1352-53.

    3.) Draft pleadings and court filing prepared by trial counsel: 1084-95; 1123-33; 1278-83.

    4.) Post-Complaint claim notes (up to October 2, 2019): 1354-1365.

[DE 29-1 at Page ID # 354-55].

The parties came before the Court on December 10, 2019, for an informal discovery dispute conference call to resolve these issues.[1] [DE 26]. The Court considered the relevant case law and arguments of the parties, and provisionally ordered Standard Fire to

> complete response to Plaintiff's Request for Production Nos. 1, 5, 10, and 11, and Interrogatories Nos. 3 and 9 as they relate to the underinsured motorist claim of Plaintiff Woods. The Court finds these documents are not protected by the attorney-client doctrine or the work product privilege to the extent the documents relate to the underlying underinsured motorist claim of Plaintiff Woods prior to October 2, 2019, whether pre- or post-litigation. This includes the coverage opinion letter from Traveler's attorney. Redactions may still be appropriate where a document relates to Woods' extra-contractual claims or the claims of third parties. A privilege log shall accompany any redactions.

[DE 27 at Page ID # 341-42]. The Court reached this conclusion because

> [t]he prevailing view of Kentucky law […] is that "the attorney-client privilege and work product doctrine are generally inapplicable in first party bad faith cases." *Madison v. Nationwide Mut. Ins. Co.*, 2012 WL 4592135, at *2 (W.D. Ky. 2012); *see also Shaheen v. Progressive Cas. Ins. Co.*, 2012 WL 3644817, at *3 (W.D. Ky. 2012). ("In first-party litigation, the entire insurance file is generally discoverable."). This is "because the insurance file is created on behalf of the insured, the entire file is typically discoverable by the plaintiff." *Madison v. Nationwide Mut. Ins. Co.*, 2012 WL 4592135, at *2 (W.D. Ky. 2012) (quoting *Minter v. Liberty Mut. Fire Ins. Co.*, 2012 WL 2430471, at *2 (W.D. Ky. 2012). In addition, "first-party bad-faith actions against an insurer can only be proved by showing exactly how the company processed the claim and why the company made

---

[1] The parties raised issues during the call, such as the discoverability of William Woods' claim file, that were not raised in the two motions currently before the Court. Because those parts of the Court's prior Order are not in dispute, the Court will not address them herein.

3

> the decisions it did. Without the claims file . . . it is difficult to see how an action for first-party bad faith could be maintained . . .. This court is therefore unwilling to predict that Kentucky's highest court would enter an opinion that would shield portions of a claims file from discovery in a first-party bad faith case on the basis of the attorney-client privilege[.]" *Minter v. Liberty Mut. Fire Ins. Co.*, 2012 WL 2430471, at *2 (W.D. Ky. 2012).

[DE 27 at Page ID # 340-41]. Because this was a teleconference without formal briefing, the Court's order was provisional. The Court permitted the parties to follow-up with appropriate motions and to fully brief the issues therein. Accordingly, Standard Fire filed the Motion for Protective Order and Motion to Modify. [DE 29 and 30]. Because the Court's prior ruling was provisional, the Court reviews the motions before it *de novo*.

## II.  ANALYSIS

Standard Fire argues the documents listed in its four categories are protected from disclosure to Plaintiff by the attorney-client privilege or work-product doctrine, or both. It appears Standard Fire asserts the attorney-client privilege as to the coverage opinion written by Enante Darout ("Darout"),[2] communications with trial counsel, and the work-product doctrine protections as to the coverage opinion, the draft pleadings and court filings prepared by trial counsel, and the post-Complaint claim notes.[3] For reasons stated below, the Court holds that the attorney-client privilege applies to communications with trial counsel to the extent those communications relate to the bad faith claims alleged in this lawsuit (the claims that are currently the subject of dispute between the parties). The Court further holds that the work-product doctrine protects trial counsel's draft pleadings and court filings and those documents do not have to be produced.

---

[2] Darout is in-house counsel for Traveler's Insurance, Standard Fire's parent company.

[3] The Court notes that there are numerous communications on the privilege log that may have a claim of attorney-client privilege as to the body of the email or letter and a claim of work-product protection as to the attachment.

4

A.     **ATTORNEY-CLIENT PRIVILEGE**

The parties agree that Kentucky law governs the application of the attorney-client privilege. FED. R. EVID. R. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *See also South Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, 763 Fed. App'x 401 (6th Cir. 2019) (applying Kentucky attorney-client privilege law in a diversity case). Yet, in examining the relevant state law, Standard Fire misconstrues the protections afforded it by the attorney-client privilege in contravention of such jurisprudence.[4] Rather, Standard Fire suggests the Court should ignore the precedent of the federal district courts in Kentucky interpreting Kentucky law because Standard Fire does not agree with their outcomes. The Court is disinclined to acquiesce to Standard Fire's request.

Specifically, Standard Fire takes issue with the Court's reliance upon *Madison v. Nationwide Mut. Ins. Co.*, 2012 WL 4592135 (W.D. Ky. 2012), *Shaheen v. Progressive Cas. Ins. Co.*, 2012 WL 3644817 (W.D. Ky. 2012), and *Minter v. Liberty Mut. Fire Ins. Co.*, 2012 WL 2430471 (W.D. Ky. 2012). Standard Fire, while acknowledging the that the holdings in *Madison* and *Minter* reject its argument, claims that *Madison* and *Minter* are incorrect because they rely on dicta from the earlier *Shaheen* decision. And Standard Fire argues *Shaheen* is misguided because the trial court's "asserted justification for the principle that the entire insurance file is discoverable in first party litigation stems from cases where the insurer had hired a lawyer to defend the insured, who then later sued the insurer for an alleged bad faith for failure to protect the insured from an

---

[4] Standard Fire insists that the Kentucky Rule of Evidence ("KRE") 503 does not provide a categorical exception for the attorney-client privilege in bad faith actions. The Court agrees and has never held that KRE 503 provides such a categorical exception. A statutory exception to attorney-client privilege for bad faith cases or insurance claim files does not exist and is not a part of the Court's reasoning in requiring Standard Fire to disclose some privileged materials. Accordingly, the Court will not address Standard Fire's arguments on this topic in any further detail.

5

excess verdict." [DE 29-1 at Page ID # 362]. Standard Fire argues that the "*Shaheen* opinion drew that principle from out of state authorities including *Dumas v. State Farm Mut. Auto. Ins. Co.*, 274 A.2d 781 (N.H. 1971); *Groben v. Travelers Indem. Co.*, 49 Misc.2d 14, 15 (N.Y. Sup. Ct. 1965) and *Chitty v. State Farm Mut. Auto. Ins. Co.*, 36 F.R.D. 37 (D.S.C. 1964), all of which involved the "dual representation" scenario[.]" [DE 29-1 at Page ID # 362]. Standard Fire, however, conveniently omits that *Shaheen* relied upon two other cases in the same paragraph that in which the court cited *Dumas*, *Groben*, and *Chitty*. Those two cases, *Minter* and *Silva v. Basin Western*, 47 P.3d 1184 (Colo. 2002), both address first-party claims that were not "dual representation" scenarios undercutting Standard Fire's attempt to distinguish *Shaheen*.

Nevertheless, Standard's Fire's thesis appears to be that the Court should abandon *Shaheen*, *Minter*, and *Madison* (the controlling case law of this district) because *Shaheen* relied on out-of-state authorities. Instead, the Court should rely entirely on *other* out-of-state opinions that are more favorable to Standard Fire's position, such as opinions from Montana, West Virginia, Washington, Indiana, California, and Florida. These opinions, unlike the cases from federal districts in Kentucky, distinguish "adversarial first-party actions" from "dual representation" first-party actions where disclosure of privileged material is at issue. Standard Fire relies on cases outside the Kentucky and the Sixth Circuit to persuade the Court to adopt this approach. The Court, however, has not located even one Kentucky state or federal case that suggests Kentucky courts recognize "adversarial first-party actions" as a subset of first-party insurance actions, or distinguish between the types of first-party insurance actions. Nor has Standard Fire cited to any such case. Without so much as a hint that Kentucky courts have or would distinguish bad faith actions arising from first-party adversarial claims (such as UIM claims) from first-party dual-representation claims, this federal Court will not extend Kentucky law to do so.

6

As explained in the Court's Memorandum Opinion dated December 23, 2019 [DE 27], the Court agrees with the Court in *Minter* that "first-party bad-faith actions against an insurer can only be proved by showing exactly how the company processed the claim and why the company made the decisions it did. Without the claims file, a contemporaneously prepared history of the handling of the claim, it is difficult to see how an action for first-party bad faith could be maintained . . .. This court is therefore unwilling to predict that Kentucky's highest court would enter an opinion that would shield portions of a claims file from discovery in a first-party bad faith case on the basis of the attorney-client privilege[.]" *Minter v. Liberty Mut. Fire Ins. Co.*, 2012 WL 2430471, at *2 (W.D. Ky. June 26, 2012). Standard Fire complains that this *Minter* opinion does not properly interpret Kentucky law, and cites to another Memorandum Opinion in *Minter* regarding the deposition testimony of trial counsel, in which that court allowed counsel to invoke the attorney-client privilege during his deposition. *See Minter v. Liberty Mut. Fire Ins. Co.*, 2014 WL 12726310 (W.D. Ky. June 26, 2014) (herein, "*Minter II*"). The trial court, in its support for the opinion in *Minter II*, cited the holding in *Collins v. Braden*, 384 S.W.3d 154 (Ky. 2012). There, the Kentucky Supreme Court strongly protected the attorney-client privilege in the context of a wrongful death medical malpractice lawsuit. Although *Collins* offers some view of the Kentucky Supreme Court's view of the privilege, an attorney's investigation into a wrongful death as a result of alleged medical malpractice is not analogous to a bad faith claim.

Unlike a medical malpractice lawsuit, a bad faith claim requires an inquiry into the insurance company's motivations for its actions. The Kentucky Supreme Court has not directly addressed this issue, so the Court looks to *Shaheen*, *Madison*, *Minter*, and then-Magistrate Judge Wier's decision in *Foster v. American Fire and Cas. Co.*, 2016 WL 8135350 (April 1, 2016), for guidance that is far more on point than *Collins*. These cases, read together, confirm that some

7

privileged information is appropriately disclosed in a first-party bad faith lawsuit where the underlying contract claim has been resolved. *See Foster v. American Fire and Casualty Company*, 2016 WL 8135350, at *4 (E.D. Ky. April 1, 2016) ("The Court finds unsupportable the suggestion that Kentucky **categorically** withholds from insurers the attorney-client privilege in first-party bad faith claims[]" but "'[p]rivileges are generally disfavored and should be strictly construed.'") (*quoting Collins v. Braden*, 384 S.W.3d 154, 159 (Ky. 2012). *See also Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512 (Ky. 2006) (post-filing behavior of insurer may be admissible to prove bad faith in Kentucky).

For these reasons, the Court finds that the attorney-client privilege does not preclude discovery of the Darout coverage opinion or communications with trial counsel at any time prior to October 2, 2019, but only to the extent those communications relate to Counts I and II of the Complaint (the contract claims). These materials are necessary to Woods' case because they will "show[] exactly how the company processed the claim and why the company made the decisions it did." *Minter v. Liberty Mut. Fire Ins. Co.*, 2012 WL 2430471, at *2 (W.D. Ky. June 26, 2012). The underlying claim in this case was a purely legal issue; the communications are relevant to the issue of whether Standard Fire had a reasonable basis to apply off-sets to Woods' UIM claim. The Court finds that because these materials relate solely to the declaratory judgment action that has been decided by Judge Hood, and the UIM contract claim for which Standard Fire tendered its policy limits, Standard Fire will not be prejudiced by producing materials not directly related to the defense of the claims currently pending against Standard Fire. (*See* Section C, *infra*, for discussion of the "live" claims pending against Standard Fire).[5]

---

[5] Standard Fire also argues the Court should not require it to disclose privileged material because it never waived its attorney-client privilege. Standard Fire's position is that although it has hinted at an advice-of-counsel defense, it has not "affirmatively" asserted the defense, thereby

The Court holds that the attorney-client privilege protects any communication between trial counsel and Standard Fire made for the purpose of giving or obtaining legal advice related to Counts III through VI of the Complaint (the bad faith claims). KRE 503. These materials are related to the instant dispute between the parties. Standard Fire would be severely prejudiced if it is compelled to produce any attorney-client privileged information related to these claims.

B.   **WORK-PRODUCT PRIVILEGE**

"In a diversity case, the court applies federal law to resolve work-product claims[.]" *In Re Powerhouse Licensing LLC.*, 441 F.3d 467, 472 (6th Cir. 2006). "Rule 26(b)(3) protects (1) 'documents and tangible things'; (2) 'prepared in anticipation of litigation or for trial'; (3) 'by or for another party or its representative.'" *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009). FED. R. CIV. P. 26(b)(3) permits discovery of these materials only where they are otherwise discoverable and "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3). The Court finds, as set forth more fully below, that the documents prepared by trial counsel during the pendency of this litigation (such as draft pleadings) are protected by the work-product doctrine, but parts of the claim file and the entire Darout coverage opinion are not.

---

not waiving the attorney-client privilege. The Court agrees, again, with Standard Fire. At this juncture, there is insufficient evidence that Standard Fire has "'affirmatively use[d] privileged communications to defend itself or attack its opponent in the action.'" *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 56 (Ky., 2018) (*quoting Hodak v. Madison Capital Mgmt.*, LLC, 2008 WL 2355798 at *3 (E.D. Ky. June 5, 2008). For these reasons, waiver was not part of the Court's analysis in determining what privileged materials Standard Fire must disclose. If, however, Standard Fire asserts an advice-of-counsel defense, the Court's analysis on this point would change.

### 1.  The Post-Complaint Claim File

An insurance claim file is frequently relied upon in litigation but is also prepared in the normal course of an insurance company's business.  Standard Fire argues that "all claim file activity since [December 11, 2018, the date of service of process] has been performed as a result of the pending litigation."  [DE 29-1 at Page ID 355].  Woods has showed a "substantial need" for the claim file documents related to her UIM claim only prior to October 2, 2019.  The Court agrees with Woods that the claim file "gives a real-time depiction of Standard Fire's decision-making process."  [DE 34 at Page ID # 449].  The Court also agrees with the *Minter* court that, without production of the claims file, it would be nearly impossible to prove bad faith.  *Minter v. Liberty Mut. Fire Ins. Co.*, 2012 WL 2430471 (W.D. Ky. June 26, 2012).  To determine whether Standard Fire had a reasonable basis for applying set-offs to Woods' UIM claim, Woods must have access to the critical information contained in the claim file, including information that is post-suit, but only to the extent it relates to the UIM claim.  Information in the claim file related to Counts III through VI of the Complaint may be redacted, as Standard Fire would be substantially prejudiced if it is compelled to produce claim file notes related to pending claims.

### 2.  The Draft Pleadings and Court Filings

Trial Counsel's draft pleadings and court filings were clearly prepared by counsel for this lawsuit.  Counsel's "mental impressions, conclusions, opinions, or legal theories" about both the UIM and the bad faith claims will permeate these documents and will not be easily redacted.  FED. R. CIV. P. 26(b)(3).  Further, Woods has not shown a "substantial need" for this category of documents.  *Id*.

### 3.  The Darout Coverage Opinion

The crux of the work product doctrine fight in this case is whether Standard Fire must produce the coverage opinion letter written by Darout.  "Making coverage decisions is part of the

10

ordinary business of insurance and if the 'driving force' behind the preparation of these documents was to assist [the insurer] in deciding coverage, then they are not protected by the work-product doctrine." *Id*. "The burden is on the party claiming protection to show that anticipated litigation was the 'driving force behind the preparation of each requested document.'" *Id*. at 439.

Standard Fire has failed to show anticipation of litigation was the "driving force" behind Darout's coverage opinion rather than in the insurance company's normal course of deciding whether or how much coverage applied to Woods' UIM claim. Standard Fire submitted an Affidavit from its claims professional, Matthew Parsons ("Parsons"), in which he states that "[u]pon receiving the Oct. 30, 2018 letter from Ms. Woods' attorneys suggesting that litigation may result, Standard Fire reviewed the legal authorities cited therein and sought a legal opinion from in-house counsel, Ms. Enante Darout." [DE 29-8 at Page ID # 427]. Yet, Parsons' Affidavit states only that he sought a legal opinion from Darout, and that the legal opinion was "in furtherance of the rendition of professional legal services," which is the standard for attorney-client privilege, not work-product protection. [DE 29-8 at Page ID # 427]. Parsons' Affidavit does not state that he sought the letter because he anticipated litigation. The "driving force" behind the Darout coverage opinion could have been anticipated litigation; however, it also could have been sought in the normal course of business in trying to determine what coverage applied to Woods' claim. Lending support to the latter scenario, Standard Fire admitted that "Parsons had reviewed a legal opinion from in-house counsel, Ms. Darout, before making the challenged claim decision." [DE 29-1 at Page ID # 364]. The fact that Woods had already sent a demand letter does not change the Court's opinion that Standard Fire has failed to make the requisite showing required to claim the protection.

Further, Standard Fire's position on the sanctity of Darout's opinion is undercut by its willingness to disclose the opinion as a negotiation tool.[6] [DE 34-1 at Page ID # 458]. Although the Court is not passing judgment on a legitimate litigation tactic, this action seriously undermines Standard Fire's claim that if it is "required to disclose . . . [the communications between Darout and Standard Fire], then . . . the attorney client relationship between the undersigned defense counsel and Standard Fire will be eviscerated and Standard Fire's ability to defend this action will be compromised." [DE 29-1 at Page ID # 357]. Surely if such dire consequences were to flow from disclosure of the coverage opinion Standard Fire would never have offered to disclose it. Accordingly, the Court finds Standard Fire must produce the Darout coverage opinion.

C.  **MOTION TO MODIFY**

Standard Fire asks the Court to modify its prior order requiring Standard Fire to produce various documents, some of which it claims are protected by attorney-client privilege and the work product doctrine. [DE 30]. Although Standard Fire's proposed Order asks the Court to vacate its entire order (rather than modify it), it appears one of Standard Fire's primary concerns is about materials created since the filing of the present lawsuit. On the one hand, Standard Fire chose to have the same defense counsel for the contract and extra-contractual claims in this lawsuit. As Woods has repeatedly pointed out, Standard Fire could have avoided this issue by bifurcating its defense counsel and claim file, just as the Court bifurcated the discovery process. On the other hand, the Court does not desire to interfere with the attorney-client relationship or invade the work-product arena as related to the defense of the bad faith claims herein.

---

[6] In a letter dated November 27, 2019, counsel for Standard Fire stated, "my client will agree to produce Ms. Darout's letter in exchange for your client's agreement that, by so providing the letter, Standard Fire is waiving attorney client and work product privilege for that communication only and nothing else. [. . .] If your client won't agree to this condition, we will need to have a conference call with the magistrate judge." [DE 34-1 at Page ID # 458].

Standard Fire argues that because Count II has not been dismissed it has a continuing "clear interest in protecting claim file materials addressing strategies for defending Ms. Woods' claims, including her damage claims for attorney fees and interest related to her UIM and no-fault claims." [DE 36 at Page ID # 350 n. 4]. Woods' claim for breach of contract, set forth in Count II, was satisfied when Standard Fire tendered its policy limits. Standard Fire has fully admitted there is no actual dispute remaining as to Count II of the Complaint. "Standard Fire contends that no justiciable controversy will exist regarding Count Two and that any claims for prejudgment interest and attorney fees have been pleaded in Count Five, Paragraph 61 of the Complaint." [DE 21, Joint Report of Planning Meeting, at Page ID # 318].

Accordingly, the Court will slightly modify its prior Memorandum Opinion. Standard Fire must produce the entire claim file prior to October 2, 2019. Standard Fire may redact attorney-client communications between Stephen Keller and Standard Fire regarding Laura Woods' claims in Counts III through VI of this lawsuit, *as well as Mr. Keller's work product, such as draft pleadings*. The Court finds that Counts I and II are, by Standard Fire's own admission, no longer "live" disputes in this matter; thus, Standard Fire must produce all documents related to the contract/UIM claims. *See also, Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512 (Ky. 2006) (post-filing behavior of insurer may be admissible to prove bad faith in Kentucky). To the extent Standard Fire has claimed attorney-client privilege protection for a communication relating to the UIM claim and the bad faith/statutory claims, the document shall not be withheld, but shall be redacted to protect all privileged information related only to the defense of the bad faith claims. An updated privilege log must accompany the production, and Standard Fire is cautioned that it should not apply the privilege too broadly, as it concedes it did in at least one instance.

### III. CONCLUSION

The Court notes that the decision in this case is highly fact specific, "rising or falling, as is almost universally the case, on the facts and law of the particular application." *Foster v. American Fire and Cas. Co.*, 2016 WL 8135350, at *4 (E.D. Ky., 2016). For the reasons stated herein, the reasons stated in the Court's Memorandum Opinion dated December 23, 2019 [DE 27], and the Court being sufficiently advised, **IT IS ORDERED** as follows:

(1) Defendant's Motion for Protective Order [DE 29] and Motion to Modify [DE 30] are **GRANTED IN PART** as to draft pleadings and court filings prepared by trial counsel (Bates stamp numbers 1084-95; 1123-33; and 1278-83) and communications with trial counsel (Bates stamp numbers 1069-73; 1080-83; 1096-97; 1100-01; 1105; 1109; 1110-20; 1121-22; 1134; 1197-98; 1264-65; 1276-77; 1284; 1285-86; 1287-88; 1312-15; 1334-36; 1342-46; 1348-51; and 1352-53), but only to the extent those communications relate to the bad faith claims or statutory damages alleged in this lawsuit (Counts III through VI of the Complaint). To the extent a communication includes protected content and non-protected content, the communication shall not be entirely withheld, but shall be appropriately redacted.

(2) Defendant's Motion for Protective Order [DE 29] and Motion to Modify [DE 30] are **DENIED IN PART** as to Darout's coverage opinion (Bates stamp number 213-16), post-Complaint claim notes (but only to the extent those communications relate to the declaratory judgment action or UIM claims alleged in Counts I and II of the Complaint) through October 2, 2019, (Bates stamp number 1354-65), and communications with trial counsel (Bates stamp numbers 1069-73; 1080-83; 1096-97; 1100-01; 1105; 1109; 1110-20; 1121-22; 1134; 1197-98; 1264-65; 1276-77; 1284; 1285-86; 1287-88; 1312-15; 1334-36; 1342-46; 1348-51; and 1352-53) to

the extent those communications relate to the declaratory judgment action or UIM breach of contract claims (Counts I and II of the Complaint).

(3)  Standard Fire shall provide an updated privilege log and the discovery ordered to be produced herein within 30 days of the date of entry of this Order.

(4)  The undersigned enters this Memorandum Opinion pursuant to 28 U.S.C. § 636(b)(1)(A).  Within fourteen (14) days after being served with a copy of this Memorandum Opinion, either party may appeal this decision to Judge Hood pursuant § 636(b)(1)(A) and FED. R. CIV. P. 72(a).

Entered this 12th day of May, 2020.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge