UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

|  |  |  |
|---|---|---|
| LAURA N. WOODS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. |
| v. | ) | 5:18-cv-658-JMH |
| | ) | |
| THE STANDARD FIRE INSURANCE | ) | **MEMORANDUM OPINION** |
| COMPANY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

** ** ** ** **

This matter is before the Court on Defendant The Standard
Fire Insurance Company's ("Standard Fire") Objections to
Magistrate Judge Stinnett's Memorandum Opinion and Order [DE 72].
The Court referred this matter to the Magistrate Judge for ruling
on discovery disputes pursuant to 28 U.S.C. § 636(b)(1)(A). [DE 22
at 1]. Standard Fire objects to the Magistrate Judge's Memorandum
Opinion and Order [DE 72], which denied Standard Fire's motions
for a protective order [DE 48] and for an order to amend/correct
the Magistrate Judge's provisional order [DE 49]. The Magistrate
Judge's ruling ultimately permits Plaintiff Laura Woods ("Woods")
to take the deposition of Enante Darout ("Darout"), in-house
counsel for Standard Fire's parent company. [DE 63 at 9]. Standard
Fire argues the Magistrate Judge erred in concluding that (1) no
other means exist to obtain the information Woods seeks, and (2)

that Darout's deposition would not pose an undue burden for Standard Fire. [*Id*. at 4-8]. For the reasons that follow, Standard Fire's objection will be overruled.

## I. BACKGROUND

The Court set forth many of the facts of this case in its August 14, 2019, Memorandum Opinion and Order [DE 15], so it will not reiterate those facts in detail here. Standard Fire, a Connecticut company, issued an automobile insurance policy to Plaintiff Laura Woods's father, a Connecticut resident. [DE 72 at 2]. Woods was seriously injured while driving her father's automobile in Kentucky, and she asserted an underinsured motorist ("UIM") claim against Standard Fire. [*Id*.].

Woods demanded the UIM coverage policy limit of $100,000 to resolve her claim. [*Id*.]. After reviewing the claim, Standard Fire made a settlement offer of $39,000, a sum reflecting offsets and credits to UIM coverage under Connecticut law. [*Id*.]. Woods's lawyers then sent correspondence to Standard Fire stating their position that Kentucky law governed the UIM claim, and, as a result, no offsets or credits should apply. [*Id*.]

Standard Fire's claims adjuster, Matthew Parsons, then requested a coverage opinion from in-house counsel, Darout.[1] [*Id*. at 3]. On November 28, 2018, Darout provided Parsons with a

---

[1] Darout is in-house counsel for Traveler's Insurance, Standard Fire's parent company.

coverage opinion stating her conclusion that Connecticut law should govern the claim. [*Id.*]. After Parsons received the coverage opinion, Standard Fire applied Connecticut law and, accordingly, applied the offsets and credits to Woods's UIM claim. [*Id.*].

Woods filed suit for breach of contract (Counts I and II), violation of the Kentucky Vehicle Reparations Act (Count III), common law bad faith (Count IV), and violation of the Unfair Claims Settlement Practices Act (Count V). [DE 1-2 at 3-12]. The Court granted partial summary judgment in favor of Woods on Counts I and II (the "contractual claims") and lifted the stay on discovery on Counts III through V (the "bad faith claims" or "extracontractual claims"). [DE 15; DE 17].

Woods sought to depose Darout regarding her coverage opinion, and Standard Fire objected. [DE 47; DE 48]. The parties held a telephone conference with the Magistrate Judge, who promptly issued a provisional order allowing the deposition to proceed. [DE 46]. Standard Fire then filed a motion for a protective order to preclude Darout's deposition [DE 48] and a motion to amend/correct the Magistrate Judge's provisional order [DE 49].

The Magistrate Judge denied the motions by Memorandum Opinion and Order, allowing the Darout deposition to proceed. [DE 63]. In agreement with Standard Fire, the Magistrate Judge determined that the test set forth in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), and adopted by the Sixth Circuit in

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002), applied to the issue of whether Woods was entitled to take Darout's deposition. [DE 63 at 3-4]. Under the *Shelton* test, a party may depose opposing counsel if it shows "that (1) no other means exist to obtain the information[]; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Nationwide*, 278 F.3d at 621 (citing *Shelton*, 805 F.2d at 1327). Analyzing each requirement, the Magistrate Judge concluded that Woods was entitled to take Darout's deposition. [DE 63 at 4-9].

Standard Fire has now filed an Objection [DE 72] to the Magistrate Judge's Memorandum Opinion and Order [DE 63]. And Woods has responded. [DE 83]. Standard Fire agrees with the Magistrate Judge's use of the *Shelton* test in considering whether Woods is entitled to take Darout's deposition, but it disagrees with the Magistrate Judge's application of that test. Specifically, Standard Fire argues the Magistrate Judge erred in concluding that (1) no other means exist to obtain the desired information and (2) that Darout's deposition would not pose an undue burden for Standard Fire under the circumstances. The Court subsequently stayed the enforcement of the Magistrate Judge's Memorandum Opinion and Order while it considered Standard Fire's objection and continued generally all deadlines in this matter. [DE 80].

4

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(a), a party may file objections to a magistrate judge's order. The district judge must then consider timely objections and may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) (setting out same standard of review).

The Court reviews the magistrate judge's factual finding under the "clearly erroneous" standard, and it reviews the legal conclusions under the "contrary to law" standard. *South Fifth Towers, LLC v Aspen Insurance Uk, Ltd*, No. 2:15-cv-151-CRS, 2016 WL 6594082, at *3 (W.D. Ky. Nov. 4, 2016) (citing *Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289, 291 (W.D. Mich. 1995)). A finding is clearly erroneous when the district court is left with "a definite and firm conviction that a mistake has been committed." *Heights Community Congress v. Hilltop Realty, Inc.*, 114 F.d2d 135, 140 (6th Cir. 1985). This standard grants considerable deference to the magistrate judge's determinations. *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995)

Conversely, under the "contrary to law" standard, the district court "may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent. Thus, this Court must exercise its independent judgment with respect to a Magistrate

Judge's legal conclusions." *Gandee v. Glaser,* 785 F. Supp. 684, 686 (S.D. Ohio 1992)).

### III. DISCUSSION

As stated, Standard Fire agrees with the Magistrate Judge's use of the *Shelton* test in considering whether Woods is entitled to take Darout's deposition. In its objection, however, Standard Fire argues the Magistrate Judge erred in concluding (1) that no other means exist to obtain the desired information and (2) that Darout's deposition would not pose an undue burden for Standard Fire under the circumstances. The Court will address each in turn.

### A. Whether No Other Means Exist to Obtain the Information Woods Seeks

The Magistrate Judge's conclusion on the first *Shelton* prong was neither clearly erroneous nor contrary to law. The Magistrate Judge determined that no other means existed to obtain the information Woods seeks in deposing Darout, which, in essence, is "how and why Darout crafted the opinion in the first place." [DE 63 at 5]. The Magistrate Judge reasoned that those documents or answers to written discovery will not answer these questions, as they do not test a deponent's credibility as a witness, and they do not allow real-time answers and follow-up. [*Id.*]. The Magistrate Judge also rejected Standard Fire's argument that Darout's deposition is unnecessary because Parsons, the claims adjuster, made the decision to apply the offsets and credits to Woods's

claim. [*Id.* at 6]. While Parsonss may have discoverable information about his claim decision, the Magistrate Judge noted that Parsons cannot answer the relevant question to which Woods seeks an answer: why did Darout write what she wrote in her coverage opinion? [*Id.*].

Standard Fire disagrees that Darout's reasons and motivations for writing what she wrote in her coverage opinion cannot be uncovered through targeted interrogatories, document requests, and requests for admission. [DE 72 at 5]. And it argues that credibility assessments are not relevant to the analysis. [*Id.*].

The Court agrees with the Magistrate Judge's conclusion that deposing Darout is necessary to obtain information regarding her reasoning for her conclusions in the coverage opinion. While targeted interrogatories may yield information about what facts and which sources of law Darout considered in forming her opinion, it would be extremely difficult to obtain from these sources an explanation of why specific facts and sources of law led Darout to the conclusions in her coverage opinion. It would also be difficult to discern how much weight Darout placed on various facts or sources of law in coming to her conclusions. And, further, Darout is the best and only available source of information regarding why she arrived at the conclusions in her coverage opinion. As Woods initially argued, [*see* DE 52 at 8-9], documents and written answers are simply not a satisfactory substitute for oral examination of Darout's processes and

objectives in writing her coverage opinion. The Magistrate Judge did not ignore or misapply law in reaching this conclusion.[2]

**B. Whether Darout's Deposition Poses an Undue Burden to Standard Fire**

Additionally, Standard Fire objects to the Magistrate Judge's determination that a protective order precluding Darout's deposition is unnecessary because the deposition would not pose an undue burden to Standard Fire. [DE 72 at 6-7]. Specifically, Standard Fire asserts that the deposition poses an undue burden because of the risk that Darout may inadvertently disclose privileged communications regarding the "live" extracontractual claims. [*Id*.]. Standard Fire argues that it is not enough that it can simply object to questions that would reveal privileged information regarding the extracontractual claims at Darout's deposition because the deposition would still pose a risk that the information could be revealed. [*Id*.]. Standard Fire asserts that "[i]t is unclear whether the Magistrate Judge considered the risk of inadvertent disclosure of privileged communications as part of the undue burden analysis." [*Id*. at 7].

---

[2] The Magistrate Judge correctly distinguished both *Kelling v. Bridegstone*, 153 F.R.D. 170 (D. Kan. 1994) and *Smith-Bunge v. Wisconsin Central*, No. 15-cv-4383-RHK-LIB, 2017 WL 11463829 (D. Minn May 1, 2017), because the advice of counsel was not at issue in either of those cases. Likewise, the Court agrees with the Magistrate Judge's decision not to rely on *Slater v. Liberty Mut. Inc. Co.*, No. CIV A. 98-1711, 1999 WL 46580 (E.D. Pa. 1999).

The Magistrate Judge rejected this argument, reiterating its previous discovery ruling's finding, [*see* DE 40], that discovery at this juncture, including deposition questions of Darout, must be limited to Counts I and II of the Complaint—*i.e.*, the contractual claims that are no longer live. [DE 63 at 7]. And the Magistrate Judge again stated that any information Darout may have regarding the "live" contractual claims is protected by the attorney-client privilege. [*Id.* at 7]. As such, Standard Fire "is entitled to object to questions that invade the attorney-client communication privilege, such as conversations Darout may have had with Standard Fire employees or defense counsel about Woods's bad faith claims." [*Id.* at 8]. Accordingly, the Magistrate Judge concluded that Darout's deposition would not pose an undue burden to Standard Fire. [*Id.* at 8-9].

The Court again agrees with the Magistrate Judge on this point. And it disagrees with Standard Fire's assertion that the Magistrate Judge failed to consider the risk of inadvertent disclosure of privileged information in determining whether the deposition would place an undue burden to Standard Fire. While the Magistrate Judge did not explicitly state that the limitations in place were also sufficient to protect Standard Fire from the risk that the deposition would inadvertently disclose privileged information, it did not need to be so specific. Its conclusion that the limitations in place were sufficient to prevent Darout's

deposition from placing an undue burden to Standard Fire was sufficient. The Magistrate Judge did not ignore or misapply the law in concluding that Darout's deposition, subject to the limitations that Darout may object to questions that invade the attorney-client privilege, would not pose an undue burden to Standard Fire. And the Court finds no basis to suggest that the Magistrate Judge's decision on this point was clearly erroneous or contrary to law.

Further, Standard Fire argues that, even if the Magistrate Judge considered the risk of Darout inadvertently disclosing privileged information in determining that no undue burden would result from denying the protective order, the Magistrate Judge still failed to consider in its undue burden analysis the extent of discovery already conducted. [*Id.* at 7-8]. Specifically, Standard Fire argues that the "significant" nature and extent of discovery already conducted in this matter counsels against Darout's deposition.[3] [*Id.* at 8].

Likewise, however, this argument does not provide a basis to find that the Magistrate Judge's decision was clearly erroneous or contrary to law. While the nature and extent of the parties' discovery may be significant, as Standard Fire asserts, the

---

[3] Standard Fire cites to *Sterne Kessler Goldstein & Fox PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 382 (D.D.C. 2011), to support this contention.

Magistrate Judge correctly concluded that the information Woods seeks to uncover in deposing Darout cannot be obtained from other forms of discovery and that Darout is the best and only available source of information regarding why she arrived at the conclusions in her coverage opinion. Further, the Magistrate Judge correctly concluded that the information Woods seeks in deposing Darout is critical in proving the second and third elements of Woods's bad faith claim: first, that Standard Fire lacked a reasonable basis in law or fact for denying the claim, and, second, that Standard Fire knew there was no reasonable basis for denying the claim or acted with malice, reckless disregard for Woods's rights, and/or gross negligence. [DE 63 at 8 (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)]. Again, the Magistrate Judge did not ignore or misapply any applicable law in concluding that Darout's deposition would not pose an undue burden to Standard Fire.

## IV. CONCLUSION

Accordingly, having considered the Magistrate Judge's Memorandum Opinion & Order [DE 63], Standard Fire's Objection [DE 72], and Woods's Response to that Objection [DE 83], **IT IS ORDERED** as follows:

(1) Defendant Standard Fire's Objection [DE 72] is **OVERRULED,** and the parties are **DIRECTED** to comply with Magistrate Judge Stinnett's Memorandum Opinion and Order at Docket Entry 63;

(2) The Court's stay [DE 80] of the enforcement of Magistrate Judge Stinnett's Memorandum Opinion and Order [DE 63] is **LIFTED;** and

(3) The parties are **DIRECTED** to file a joint status report containing new proposed deadlines for discovery and dispositive motions **within fourteen (14) days.**

This the 16th day of August, 2021.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge