# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

| | | |
|---|---|---|
| **LAURA N. WOODS,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 5:18-CV-658-JMH-MAS** |
| **v.** | ) | |
| | ) | |
| **THE STANDARD FIRE INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Laura N. Woods' Motion to Compel and for *In Camera* Review. [DE 101]. For the Motion to Compel, Woods seeks to compel the deposition of three in-house lawyers for Defendant Standard Fire Insurance Company's ("Standard Fire") parent company. Standard Fire contends that the depositions would invade the province of the attorney-client privilege and is not proportional to the needs of the case. As to the i*n camera* request, Woods requests the Court review of twenty-one pages of documents redacted or withheld based on claims of work product protection. Standard Fire does not object to an *in camera* review. The Court previously held a telephone conference on this dispute, at which time the Court ordered the parties to brief these issues. [DE 98]. Woods filed the instant Motion to Compel and for *In Camera* Review [DE 101]. Standard Fire responded [DE 102], Woods replied [DE 104] and this matter is ripe for a decision.

## I.  **FACTUAL & PROCEDURAL BACKGROUND**

The parties largely agree on the factual and procedural posture of the case, which the Court will not reiterate in detail here.  Woods was involved in an automobile accident and asserted an underinsured motorist ("UIM") claim against Standard Fire.  The claim presented a choice-of-law question not addressed in the insurance contract.  Standard Fire, based upon a coverage opinion from Darout, applied Connecticut law and, pursuant to that law, applied off-sets to the UIM coverage.  Woods filed suit for breach of contract (Counts I and II), violation of the Kentucky Motor Vehicle Reparations Act (Count III), common law bad faith (Count IV), and violation of the Unfair Claims Settlement Practices Act (Count V).  Judge Hood granted partial summary judgment in this case in favor of Woods, resolving Counts I and II (the so-called "contractual claims"), and lifted the stay permitting discovery on Counts III through V (the "bad faith claims" or "extracontractual claims").

After a long-litigated fight, the undersigned ruled (and Judge Hood affirmed) that Woods could depose Enante Darout regarding the coverage opinion she issued to Standard Fire's claims adjuster Matthew Parsons.  [DE 63 and 89].  The Court previously held that Standard Fire had to produce Darout's coverage opinion.  [DE 40].  Woods deposed Darout about her coverage opinion on October 18, 2021.  That deposition ultimately revealed new information and the existence of documents that are the subject of this dispute.  Specifically, Darout testified that she was supervised by three other in-house lawyers, Patricia Allen, Katie Roh, and Dawn Midkiff for Standard Fire as part of a secondment program, during which time she drafted the coverage opinion at issue in this case.  Woods now seeks to take the deposition of all three attorneys.

Prior to Darout's deposition, the Court ruled Woods was not permitted to take the deposition of Allen.  [DE 76].  Based on the information available at that time, the Court found Woods had not satisfied the *Shelton* test to justify taking the deposition of Allen.  [DE 76].  In light

2

of the new information in the record, the Court revisits the *Shelton* analysis as to Allen, and applies the analysis to the requested depositions of Roh and Midkiff.

Additionally, the Court addresses Woods' request for *in camera* review of twenty-one withheld or redacted documents.

## II.   ANALYSIS

### A.   APPLICATION OF THE *SHELTON* TEST

For the reasons cited in its Memorandum Opinion and Order dated October 22, 2021, the Court will apply the test for deposing in-house counsel set forth in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) and adopted by the Sixth Circuit in *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) to determine whether Woods will be permitted to take the depositions of Allen, Roh, and Midkiff.  Pursuant to *Shelton* and its progeny, Woods must show that "(1) no other means exist to obtain the information; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (citing *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)); *See also Smith-Bunge v. Wisconsin Central, Ltd.*, 2017 WL 11463829, at *4 (D. Minn. May 1, 2017) (citing several cases applying *Shelton* to depositions of in-house counsel); *Upjohn Co. v. United States*, 449 U.S. 383 (1981) (discussing that in-house counsel is afforded the same attorney-client privilege as litigation counsel).  The Court finds the Woods has made such a showing as to Allen, but not as to Roh or Midkiff.

### 1.   There are no other means to obtain the information.

As cited above, the first prong of the *Shelton* test is that a deposition of a party's attorney is permissible only if "no other means exist to obtain the information."  *Nationwide*, 278 F.3d at 628.

The issue at hand is how and why Darout crafted the coverage opinion in the first place. As the Court previously noted, the purpose of the inquiry into Darout—and consequently Roh, Midkiff, and Allen—is to uncover "why she wrote what she wrote." [DE 63 at Page ID 653 (citing DE 52 at 592)]. Darout's testimony shows that Allen may have knowledge about why Darout wrote what she wrote—in fact, she appears to have been intimately involved with drafting the coverage opinion—and there is no alternative means to obtain the information Allen has other than by deposing her.

The same is not true of Roh or Midkiff. The information in the record is that Roh and Midkiff do not have any information about the substance of the coverage opinion. Roh and Midkiff were merely involved in assigning the matter to Allen, who then assigned it to Darout. It appears Roh and Midkiff possess little, if any, knowledge about the coverage opinion, and that there are alternative means to obtain the relevant information: the testimony of Darout and Allen.

## 2. __The information is relevant and not privileged.__

The Court previously found that Darout's coverage opinion was not privileged. [DE 40 at Page ID # 525-26]. Standard Fire concedes that the coverage opinion is relevant to Woods' bad faith claim. [DE 48-1 at Page ID # 557-58]. The Court does not see any reason to distinguish Roh, Midkiff, or Allen's testimony from Darout's on this factor. As the Court held in its Memorandum Opinion and Order, any questions of in-house counsel must be limited to Counts I and II of the Complaint, *i.e.*, the "contractual claims" that are no longer "live." Standard Fire has asserted that Allen has remained active in this matter post-Complaint, including as related to the extracontractual claims asserted in Counts III through V of the Complaint; to the extent Allen has

information on those claims, it is protected by the work-product doctrine and attorney-client privilege.[1]

### 3.   <u>The information is crucial to the case.</u>

To prevail on her extracontractual claims, Woods must prove that Standard Fire (1) was obligated to pay the claim; (2) lacked a reasonable basis in law or fact for denying the claim; and (3) knew there was no reasonable basis for denying the claim or acted with malice, reckless disregard for her rights, and/or gross negligence to prove her bad faith claim. *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Judge Hood already ruled that Standard Fire was obligated to pay the claim, satisfying the first element. The Court previously found that critical information to prove the second and third elements of Woods' bad faith claim rests, at least in part, with Darout. And upon the deposition of Darout, similar critical information to prove the second and third elements of Woods' bad faith claim likely rests with Allen. Darout testified that she did not know why Allen did not select outside or in-house counsel licensed in Kentucky rather than Darout. [DE 101-15, at Page ID # 921 (Ex. O, Darout Depo. Excerpt)]. Darout further testified Allen supervised "the assignment" of drafting the coverage opinion, and that if she had any questions about "the assignment" she directed those to Allen. [DE 101-15 at Page ID # 918 (Ex. O, Darout Depo. Excerpt)]. Darout described that she "**work[ed] with** the attorney who assign[ed] the case or assign[ed] the referral to me[,]" meaning that she worked directly with Allen on drafting the coverage opinion. Numerous entries in Standard Fire's privilege log support Darout's testimony.[2]

In its prior Memorandum Opinion and Order denying Standard Fire's request for a protective order shielding Darout from being deposed, the Court found as follows:

---

[1] See the Court's prior analysis on these matters in DE 40 and 63.

[2] For example: Bates Stamp Nos. TRAV 2640, 2646, 2656-57, and 2660-62 reflect email communications between Darout and Allen "concerning Claim Legal referral and draft opinion." [DE 101-13 at Page ID # 903-905 (Ex. M, Standard Fire Privilege Log)].

Standard Fire specifically mentioned the importance of Darout's coverage opinion to Parsons' coverage decision in its responses to written discovery, stating that "[a]fter receiving and reviewing the opinion from Ms. Darout, Mr. Parsons made the ultimate decision to apply certain credits and offsets to the UIM coverage limit for Plaintiff's claim." [Standard Fire's Answers to Interrogatories, DE 34-3]. Woods is entitled to explore what factual information and law Darout considered, how long she considered it, what benefit she obtained, if any, from her conclusion, etc. These questions and numerous other inquiries are crucial to whether Standard Fire lacked a reasonable basis for denying Woods' claim, and, if so, whether Standard Fire knew it lacked a reasonable basis for its decision or otherwise acted with malice, reckless disregard, or gross negligence.

[DE 63 at Page ID # 656]. The Court's logic has not changed. Darout's testimony and the newly disclosed communications between Darout and Allen strongly suggest that Allen heavily influenced the ultimate coverage opinion. Allen's communications with Darout, both in email and in person[3] appear to be part of the "factual information and law Darout considered" in drafting the coverage opinion. Woods is entitled to explore whether or to what extent Allen explicitly or implicitly altered the conclusion in Darout's coverage opinion.

Standard Fire puts forth two weak arguments in opposition. First, the Court previously denied Woods' request to depose Allen citing a prior provisional ruling. Specifically, the Court previously found hatt the information sought from Allen can be obtained through the depositions of Ms. Darout and Mr. Parsons." [*See* DE 76 at Page ID # 719 (Provisional Ruling)]. However, the information available at that time did not reflect Allen's detailed supervision of Darout concerning the coverage opinion as elucidated in Darout's deposition. The Court finds that this new information sufficiently supports Woods' argument that the information Allen possesses cannot be obtained through other sources, like the deposition of Parsons or Darout, as indicated by Darout in her deposition.

---

[3] Darout testified she could not recall if she had in-person conversations with Allen about the coverage opinion assignment, but stated it was possible. [DE 101-15 at Page ID # 917-18 (Ex. O, Darout Depo. Excerpt)]

Standard Fire's second argument in opposition to Allen's deposition is that "[a]lthough Allen and Darout communicated with one another during the process of Darout's preparation of the coverage opinion, the contents of those communications are not essential to the Plaintiff's case. The Plaintiff has already sought and received the opinion and has already deposed Darout, the individual who prepared it."  [DE 102 at Page ID #929].  The Court disagrees.  As stated above, Allen and Darout's communications are essential to finding out "why [Darout] wrote what she wrote," which, in turn, is essential to whether Standard Fire lacked a reasonable basis in law or fact for denying Woods' claim and knew there was no reasonable basis for denying the claim or acted with malice, reckless disregard for her rights, or gross negligence in so doing. *See Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993).

The Court finds that Woods is entitled to ask questions regarding Allen's involvement with and supervision of Darout as related to the coverage opinion letter.  Likewise, Standard Fire is entitled to object to questions that invade the attorney-client communication privilege, such as conversations Allen may have had with Standard Fire employees or defense counsel about Woods' bad faith claims.  These limitations will prevent the deposition of Allen from placing an undue burden on Standard Fire by protecting the privileged information that relates to the current dispute between the parties.

The Court, however, remains unconvinced that Roh or Midkiff have information that is crucial to the case.  The information in the record suggests Roh and Midkiff had absolutely no substantive interaction with Darout or Allen regarding the coverage opinion.  Roh was Darout's internship supervisor.  Woods has not presented any information that implies Roh had any specific interaction with Darout regarding the coverage opinion.  In fact, the excerpts of Darout's deposition that Woods' put in the record suggest that only Allen—not Roh—had any substantive

7

input in the coverage opinion. The Court finds that the fact that Roh generally supervised Darout and provided a performance review during her secondment is not crucial information for the prosecution of this matter. On these facts, compelling Roh's deposition would not be proportionate to the needs of this case.

Further, "Midkiff is an in-house lawyer for Travelers who received a request for legal advice originating with Matthew Parsons. Midkiff, as general counsel for the region of the country where Parsons was assigned, then reviewed the request and less than a few hours later sent it to Patricia Allen for further handling. [. . .] That was the extent of Midkiff's involvement." [DE 102 at Page ID #902]. There is no information in the record that implies Midkiff had any other interaction with this claim or Darout. Woods has not described even generally what she would gain from the deposition of Midkiff beyond what amounts to a general assertion that Midkiff might know something about Darout. The Court finds that Midkiff likely does not have information that is crucial to Woods' claims, and compelling her deposition would be disproportionate to the needs of this case.

## B.     IN CAMERA REVIEW

Woods requests *in camera* review of twenty-one pages of redacted or withheld documents. Standard Fire does not object to an *in camera* review. As required in its prior Order on a similar dispute [DE 75], the parties followed the procedure set forth in *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 266-67 (D. Md. 2008) and adopted by several district courts around the country:

> Thus, insuring that a privilege or protection claim is properly asserted in the first instance and maintained thereafter involves a several step process. First, pursuant to Fed. R. Civ. P. 26(b)(5), the party asserting privilege/protection must do so with particularity for each document, or category of documents, for which privilege/protection is claimed. At this first stage, it is sufficient to meet the initial burden by a properly prepared privilege log. If, after this has been done, the requesting party challenges the sufficiency of the assertion of privilege/protection,

the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege/protection claimed for each document or category of document. A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden. If it makes this showing, and the requesting party still contests the assertion of privilege/protection, then the dispute is ready to submit to the court, which, after looking at the evidentiary support offered by the asserting party, can either rule on the merits of the claim or order that the disputed documents be produced for in camera inspection.

*In re Haynes*, 577 B.R. 711, 740 (Bkrtcy. E.D. Tenn. 2017) (quoting *Victor Stanley, Inc., v. Creative Pipe, Inc.*, 250 F.R.D. 251, 266-67 (D. Md. 2008); *accord*, *In re Ahlan Industries, Inc.*, 2020 WL 3620332, at *13 (Bkrtcy. W.D. Mich. 2020), *Hepburn v. Workplace Benefits, LLC*, 2014 WL 12623294, at *4 (E.D.N.C. April 18, 2014), *Micillo v. Liddle & Robinson LLP*, 2016 WL 2997507, at *6 (S.D.N.Y. May 23, 2016). Woods states the parties have followed the *Victor Stanley* procedures and her challenge of Standard Fire's assertion of the privilege persists. As the Court previously noted, in some instances, *in camera* review "can be an enormous burden to the court, about which the parties and their attorneys often seem to be blissfully unconcerned." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 265 (D.Md.,2008). In this instance, however, Woods requests the Court review only twenty-one pages for privilege. This is a minimal burden to the Court. Additionally, because the requested review is limited, it appears that any intrusion into privileged material will be minor. The Court finds that the parties have sufficiently completed the *Victor Stanley* procedure and have not resolved the dispute; thus, the matter is ripe for the Court's *in camera* review and decision.

## III.   <u>CONCLUSION</u>

Accordingly, for the reasons stated herein and the Court being sufficiently advised, the Court **ORDERS** the Motion to Compel and for In Camera Review [DE 101] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1) The Motion to Compel as to the deposition of Patricia Allen is **GRANTED**;

2) The Court will not require the remaining depositions be taken in any particular order, as Standard Fire requests in its response;

3) The Motion to Compel as to the deposition of Katie Roh is **DENIED**;

4) The Motion to Compel as to the deposition of Dawn Midkiff is **DENIED**;

5) The Motion for In Camera Review of twenty-one documents is **GRANTED**;

    a. Standard Fire shall submit, *ex parte* via email ([Stinnett_chambers@kyed.uscourts.gov](mailto:Stinnett_chambers@kyed.uscourts.gov)) the twenty-one pages of withheld or redacted documents for the Court's *in camera* review by no later than 5:00 p.m. on December 2, 2021.

6) The undersigned enters this Memorandum Opinion and Order pursuant to 28 U.S.C. § 636(b)(1)(A).  Within fourteen (14) days after being served with a copy of this Memorandum Opinion and Order, either party may appeal the decisions in (1)-(3) above to Judge Hood pursuant to § 636(b)(1)(A) and FED. R. CIV. P. 72(a).  The Court's decision on the challenged documents in (4), above, will be appealable upon entry of an Order ruling on the privileges asserted in those documents after *in camera* review.

Entered this 29th day of November, 2021.



Signed By:

Matthew A. Stinnett

United States Magistrate Judge