Ex 45 - TR 2647-53

| | |
|---|---|
| From: | Darout,Enante <EDAROUT@travelers.com> |
| Sent: | Tuesday, November 20, 2018 3:48 PM |
| To: | Claim Legal Cognizant |
| Subject: | 2018123095 |
| Attachments: | Auto - Dawson Newberry - H0A6087 - draft.docx |

Title: Draft opinion

Enante Darout | Associate Counsel | Claim Legal Liability
Licensed in PA & NJ
Travelers
New Jersey Claim Center
W: 973-631-3129   F: 877-786-5568
Mailing Address:
Travelers
P.O. Box 430
Buffalo, NY 14240-0430

**TRAVELERS**

From: Darout,Enante
Sent: Tuesday, November 20, 2018 3:38 PM
To: Roh,Katie J. <KROH@travelers.com>
Subject: FW: Auto - Dawson Newberry - H0A6087 - draft.docx

Enante Darout | Associate Counsel | Claim Legal Liability
Licensed in PA & NJ
Travelers
New Jersey Claim Center
W: 973-631-3129   F: 877-786-5568
Mailing Address:
Travelers
P.O. Box 430
Buffalo, NY 14240-0430

**TRAVELERS**

From: Darout,Enante
Sent: Tuesday, November 20, 2018 3:37 PM
To: Allen,Patricia M <PALLEN@travelers.com>
Subject: Auto - Dawson Newberry - H0A6087 - draft.docx

Pat,

I apologize for the drafts, but the key difference that you and I discussed about the LaCrosse case is the very crux of the issue. In short, we were right the first time. As you and I discussed, the key difference with Lacrosse and our case is that the person seeking benefits in the Lacrosse case was not a resident of KY. Because he was not a resident of KY, KY has no

1

TRAV_002647

compelling interest. However, where the person affected by the differing conflict of laws results is a resident, KY will have an interest.

*8 Yet, Georgel overlooks a key aspect of *Preston* that is not present under the facts at hand. In *Preston*, the insured stood to benefit from Kentucky law—was in fact a citizen of Kentucky. *Id.* at 146. By contrast, Georgel is not. As the Kentucky explained in *Hodgkiss-Warrick*, the public policy exception requires a "wellfounded rule of domestic policy protect the morals, safety or welfare of our people." 413 S.W.3d 875, 882 (Ky 2013) (emphasis supplied). Further, t "[w]here no Kentucky resident has been affected, rarely will that standard be met." *Id*, see also *State Farm Mut. Aut Marley*, 151 S.W.3d 33, 42 (Ky 2004) ("Kentucky has no interest in applying our public policy to provide benefits to who would not be entitled to them under Indiana law."). With the dismissal of Preece, this action no longer involves resident, thus, it would be improper to deviate from the standard choice of law rules in order to promote Kentucky's comparative negligence.

Georgel v. Preece, 2014 WL 5500404 (E.D.Ky. Oct. 30, 2014).

TRAV_002648

Matt,

In a matter regarding whether UIM policy limits can be reduced by amounts paid to an injured party, claimant's counsel asserts that Kentucky law should prevails, allowing a UIM insurer to take a credit, or reduce payout, against the <u>total amount of an injured party's damages</u>. It is your position that the Connecticut-written policy should prevail due to the significant relationship Connecticut as with this loss. Claimant's counsel believes that the UIM limit of $100,000 should be tendered, while it is your position that $39,000 should be tendered as the claimant has received $61,000 which has been paid by or on behalf of Eaves. It is my opinion that Kentucky law.

Factual Background:

This claim arises out of motor vehicle accident that took place on December 18, 2016. According to the police report, Joshua Eaves was traveling west on Military Pike when he hit a slick spot on the road, causing him to lose control and collide with a vehicle operated by Stephen Sims. After hitting Sims's car, Eaves struck a car operated by the Laura Woods's head on, causing the her car to overturn. As a result of the accident, Woods suffered fractures in booth of her feet and multiple fractures in her lumbar spine.

The insured vehicle is owned by Laura Woods's father. Woods is a legal resident of Kentucky, but her father is domiciled in Connecticut. Her father was visiting her at the time of loss and gave her permission to use the vehicle because her car was not able to be used at the time of the loss.

Policy

The Standard Fire Insurance Company issued, to Dawson Newberry, policy 996057891 203 1, effective July 9, 2016 to July 9, 2017. This policy included Uninsured and Underinsured Motorist Bodily Injury coverage limits of $100,000 each person and $300,000 each accident.

> Coverage D1 – Uninsured And Underinsured Motorists Bodily Injury
>
> Insuring Agreement
>
> A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury":
>    1. Sustained by an "insured"; and
>    2. Caused by an accident.
>
>    The owner's operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle: or "underinsured motor vehicle".

TRAV_002649

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

We will pay under this coverage only after limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payments of judgments or settlements.

B. "Insured as used in this Coverage Section means:
  1. You or any "resident relative".
  2. Any other person "occupying" "your covered auto"
  3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

D. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the limit of liability for this coverage under this policy.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

  1. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:
       a. Denies coverage; or
       b. Is or becomes insolvent.
  2. Owned or operated by a self0insurer under any applicable motor vehicle law.
  3. Owned by or furnished or available for your regular use.

\*\*\*

### Limits of Liability

C. The limit of liability will be reduced by all sums:
  1. Paid to "insureds" because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Coverage A; and
  2. Paid or payable because of the "bodily injury" under any workers' compensation law or similar law.

Analysis:

1) Is there a conflict of laws?

In determining whether there is a choice-of-law issue, there must truly be a conflict between two or more jurisdictions. Woods's attorney maintains that there is. In Connecticut, reductions of limits in policies are allowed "to the extent that damages have been (A) paid by or on behalf of any person responsible for the injury;" (Conn Agencies §38a-344-6(d)(1)(A)). It allows for reducing the UIM benefits by the amounts paid.

Kentucky UIM benefits are governed by KRS 304.39-320. Woods's attorney maintains that while "credits" or reductions may be taken, they are to be taken against the total amount of the injured party's damages as opposed to reducing the available amount of UIM coverage by taking a credit for a tortfeasor's liability limits. As such, Claimant's attorney provides that there is a conflict.

KRS 304.39-320 states in part:

> Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident *because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon*, to the extent of the underinsurance **policy limits** on the vehicle of the party recovering.

KRS 304.39-320(2) (emphasis added).

Subsequent statutory subsections clarify that an injured party is allowed "to settle a claim with a liability insurer and its insured for less than the underinsured motorist's full liability policy limits." KRS 304.39-320(3). In any such settlement, the UIM carrier is still "entitled to a credit against total damages in the amount of the limits of the [tortfeasor's] liability insurance." In other words, the UIM carrier is liable only for damages for which the insured would have been compensated but for the fact that the tortfeasor was underinsured. It follows that if the underinsured tortfeasor could not be held liable for an item of damages, that item is not "uncompensated damages" payable by the UIM carrier. The UIM carrier is liable for damages only to the extent to which the underinsured tortfeasor is or could have been held liable." Cincinnati Ins. Co. v. Samples, 192 S.W.3d 311, 317 (Ky. 2006).

Based on the review of these two UIM statutes, there seems to be a disconnect. While one allows for reduction to the extent damages are paid on behalf of the responsible party, the other would call for the UIM to compensate the insured to be compensated but for the fact that the tortfeasor was underinsured.

TRAV_002651

2) Choice of law analysis

As mentioned previously, Ms. Woods' attorney asserts that a Choice of Law issue exists due to the differing positions that Travelers and Woods have taken. In determining which state law applies, Connecticut court employs the "most significant relationship" test found in Restatement (Second) Conflict of Laws, §§ 188(2) (1971), where no choice of law provision exists in a contract. American States Ins. Co. v. Allstate Ins. Co., 922 A.2d 1043 (Conn. 2007). The "most significant relationship" test weighs factors such as (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. §§ 188(2).

Similarly in Kentucky, where the claim sounds in contract, as it does here, Kentucky also applies the "most significant relationship" test found in Restatement (Second). Kentucky, however, has an additional step. If after applying the proper test, the law of another state governs, Kentucky has an additional step under its choice of law rules. The court must consider whether the other state's law is repugnant to a well-established and clearly identified public policy in Kentucky. If so, a court shall forgo applying that law and use Kentucky law instead. State Mut. Auto Ins. Co. v. Marley, 151 S.W.3d 133 (Ky. 2004).

Applying the "most significant relationship" test to the facts here, we find that Connecticut law would govern this case. This is a Connecticut policy. The place of contracting, negotiations, and execution took place in Connecticut. The insured is domiciled in Connecticut. It also believed that the car is registered, garaged, and used exclusively in Connecticut. "The fortuitous fact the accident occurred in Kentucky is far outweighed by the significant relationship Pennsylvania has with parties and the insurance transaction, and so, absent some compelling reason not to apply our general choice-of-law rule, Pennsylvania law should control. See State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick, 413 S.W.3d 875 (Ky. 2013) (The automobile accident occurred in Kentucky, the insured was a resident of Pennsylvania; the vehicle was garaged in Pennsylvania; and the insurance contract was also written and purchased in Pennsylvania.).

The next question is whether Public Policy prohibits the Policy Provision at issue.

In LaCrosse v. Owners Insurance Co., 531 S.W.3d 25 (Ky. Ct.App. 2016), the Court of Appeals reviewed a case in which there was a similar UIM coverage choice of law issues. In the underlying matter, the trial court applied Illinois law in determining both the policy limits and UIM coverage obligation, including reduction of setoffs. While LaCrosse argued that Kentucky law should have applied and that Kentucky law prohibits the setoffs applied by the trial court, the Court of Appeals not only found that the most significant relationship test revealed that Illinois should govern, it also found that Kentucky has no clear public policy on UIM coverage. As Kentucky had no compelling interest in applying its own laws, the Court of Appeals agreed with the trial court that Illinois law applies.

TRAV_002652

The LaCrosse case does have distinguishable facts from the case at bar. While the LaCrosse case dealt with an out-of-state permissive driver with no ties to KY seeking UIM coverage under his employer's policy (written out of Illinois), the person seeking UIM benefits happens to be a KY resident. In our case, the permissive driver is a resident of KY. That distinction may be enough to have a Court's balancing test weigh in KY's favor.

> To bar enforcement in the case where the contract was valid where made, the Kentucky public policy against enforcement must be a substantial one, a "well-founded rule of domestic policy established to protect the morals, safety or welfare of *our people*." Where no **Kentucky resident** has been affected, rarely will that standard be met. It is not met here where the competing **public policies**—supposing a Kentucky policy against this **UIM** exclusion—concern only the balance to be struck between required insurance coverage and insurance affordability, a balance different states have assessed differently. Since here no **Kentucky resident** is affected, nothing requires a Kentucky court to interfere with the balance Pennsylvania has chosen for its citizens.

Hodgkiss-Warrick at 882-83. (internal citations omitted) (emphasis added). *See Also* Georgel v. Preece 2014 WL 5500404 (E.D.Ky. Oct. 30, 2014).

## Conclusion

It is my opinion that a conflict of interest clearly exists. Where the issue affects a Kentucky resident, as it does in this case, a court may be inclined to preserve and protect its own people. There is no doubt that CT has more significant relationship, apart from the state where the permissive driver resides. However, it is likely that KY will have a competing interest in determining which law will affect its residents.