From: Darout,Enante
Sent: Wednesday, November 28, 2018 2:43 PM
To: Parsons,Matthew W <MWPARSON@travelers.com>
Cc: Allen,Patricia M <PALLEN@travelers.com>
Subject: Auto Claim Referral - Dawson Newberry - H0A6087 (MA: 2018123095)

Ex 28 - TR 213-216

**PRIVILEGED & CONFIDENTIAL**
**Attorney-Client Privilege**
**Attorney Work Product**

DO NOT DISTRIBUTE OUTSIDE OF TRAVELERS CLAIM.

DO NOT COPY INTO CLAIM NOTES, IN WHOLE OR IN PART, UNLESS THE CLAIM NOTES ARE MARKED "SENSITIVE."

Matt,

In a matter regarding whether UIM policy limits can be reduced by amounts paid to an injured party, claimant's counsel asserts that Kentucky law should prevails, allowing a UIM insurer to take a credit, or reduce payout, against the <u>total amount of an injured party's damages</u>. It is your position that the Connecticut-written policy should prevail due to the significant relationship Connecticut as with this loss. Claimant's counsel believes that the UIM limit of $100,000 should be tendered, while it is your position that $39,000 should be tendered as the claimant has received $61,000 which has been paid by or on behalf of Eaves. It is my opinion that Connecticut law will govern this matter.

Factual Background:

This claim arises out of motor vehicle accident that took place on December 18, 2016. According to the police report, Joshua Eaves was traveling west on Military Pike when he hit a slick spot on the road, causing him to lose control and collide with a vehicle operated by Stephen Sims. After hitting Sims's car, Eaves struck a car operated by the Laura Woods's head on, causing the her car to overturn. As a result of the accident, Woods suffered fractures in booth of her feet and multiple fractures in her lumbar spine.

The insured vehicle is owned by Laura Woods's father. Woods is a legal resident of Kentucky, but her father is domiciled in Connecticut. Her father was visiting her at the time of loss and gave her permission to use the vehicle because her car was not able to be used at the time of the loss.

Policy

The Standard Fire Insurance Company issued, to Dawson Newberry, policy 996057891 203 1, effective July 9, 2016 to July 9, 2017. This policy included Uninsured and Underinsured Motorist Bodily Injury coverage limits of $100,000 each person and $300,000 each accident.

Coverage D1 – Uninsured And Underinsured Motorists Bodily Injury

Insuring Agreement

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury":
    1. Sustained by an "insured"; and
    2. Caused by an accident.
    The owner's operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle: or "underinsured motor vehicle".

TRAV_000213

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

We will pay under this coverage only after limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payments of judgments or settlements.

B. "Insured as used in this Coverage Section means:
   1. You or any "resident relative".
   2. Any other person "occupying" "your covered auto"
   3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.
D. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type for which the sum of the limits of liability under all bodily injury liability bonds or policies applicable at the time of the accident is less than the limit of liability for this coverage under this policy.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

1. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes insolvent.

2. Owned or operated by a self0insurer under any applicable motor vehicle law.
3. Owned by or furnished or available for your regular use.

\*\*\*

**Limits of Liability**

C. The limit of liability will be reduced by all sums:
   1. Paid to "insureds" because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Coverage A; and
   2. Paid or payable because of the "bodily injury" under any workers' compensation law or similar law.

Analysis:

1) Is there a conflict of laws?

In determining whether there is a choice-of-law issue, there must truly be a conflict between two or more jurisdictions. Woods's attorney maintains that there is. In Connecticut, reductions of limits in policies are allowed "to the extent that damages have been (A) paid by or on behalf of any person responsible for the injury;" (Conn Agencies §38a-344-6(d)(1)(A)). It allows for reducing the UIM benefits by the amounts paid.

Kentucky UIM benefits are governed by KRS 304.39-320. Woods's attorney maintains that while "credits" or reductions may be taken, they are to be taken against <u>the total amount of the injured party's damages</u> as opposed to reducing the available amount of UIM coverage by taking a credit for a tortfeasor's liability limits. As such, Claimant's attorney provides that there is a conflict.

KRS 304.39-320 states in part:

Every insurer shall make available upon request to its insureds underinsured motorist

coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident *because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon,* to the extent of the underinsurance **policy limits** on the vehicle of the party recovering.

KRS 304.39–320(2) (emphasis added).

Subsequent statutory subsections clarify that an injured party is allowed "to settle a claim with a liability insurer and its insured for less than the underinsured motorist's full liability policy limits." KRS 304.39–320(3). In any such settlement, the UIM carrier is still "entitled to a credit against total damages in the amount of the limits of the [tortfeasor's] liability insurance." In other words, the UIM carrier is liable only for damages for which the insured would have been compensated but for the fact that the tortfeasor was underinsured. It follows that if the underinsured tortfeasor could not be held liable for an item of damages, that item is not "uncompensated damages" payable by the UIM carrier. The UIM carrier is liable for damages only to the extent to which the underinsured tortfeasor is or could have been held liable." Cincinnati Ins. Co. v. Samples, 192 S.W.3d 311, 317 (Ky. 2006).

Based on the review of these two UIM statutes, there seems to be a disconnect. While one allows for reduction to the extent damages are paid on behalf of the responsible party, the other would call for the UIM to compensate the insured to be compensated but for the fact that the tortfeasor was underinsured.

2) Choice of law analysis

As mentioned previously, Ms. Woods' attorney asserts that a Choice of Law issue exists due to the differing positions that Travelers and Woods have taken. In determining which state law applies, Connecticut court employs the "most significant relationship" test found in Restatement (Second) Conflict of Laws, §§ 188(2) (1971), where no choice of law provision exists in a contract. American States Ins. Co. v. Allstate Ins. Co., 922 A.2d 1043 (Conn. 2007). The "most significant relationship" test weighs factors such as (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. §§ 188(2).

Similarly in Kentucky, where the claim sounds in contract, as it does here, Kentucky also applies the "most significant relationship" test found in Restatement (Second). Kentucky, however, has an additional step. If after applying the proper test, the law of another state governs, Kentucky has an additional step under its choice of law rules. The court must consider whether the other state's law is repugnant to a well-established and clearly identified public policy in Kentucky. If so, a court shall forgo applying that law and use Kentucky law instead. State Mut. Auto Ins. Co. v. Marley, 151 S.W.3d 133 (Ky. 2004).

Applying the "most significant relationship" test to the facts here, we find that Connecticut law would govern this case. This is a Connecticut policy. The place of contracting, negotiations, and execution took place in Connecticut. The insured is domiciled in Connecticut. It also believed that the car is registered, garaged, and used exclusively in Connecticut. "The fortuitous fact the accident occurred in Kentucky is far outweighed by the significant relationship Pennsylvania has with parties and the insurance transaction, and so, absent some compelling reason not to apply our general choice-of-law rule, Pennsylvania law should control. See State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick, 413 S.W.3d 875 (Ky. 2013) (The automobile accident occurred in Kentucky, the insured was a resident of Pennsylvania; the vehicle was garaged in Pennsylvania; and the insurance contract was also written and purchased in Pennsylvania.).

The next question is whether Public Policy prohibits the Policy Provision at issue.

TRAV_000215

In LaCrosse v. Owners Insurance Co., 531 S.W.3d 25 (Ky. Ct.App. 2016), the Court of Appeals reviewed a case in which there was a similar UIM coverage choice of law issue. In the underlying matter, the trial court applied Illinois law in determining both the policy limits and UIM coverage obligation, including reduction of setoffs. While LaCrosse argued that Kentucky law should have applied and that Kentucky law prohibits the setoffs applied by the trial court, the Court of Appeals not only found that the most significant relationship test revealed that Illinois should govern, it also found that Kentucky has no clear public policy on UIM coverage. As Kentucky had no compelling interest in applying its own laws, the Court of Appeals agreed with the trial court that Illinois law applies.

Even when the issue of residency is a bit more convoluted, Kentucky has applied another state's law. Thaxton v. Allstate Insurance Company; 2018 WL 3005930 (Jun. 15, 2018 Ct. App. Ky.). The Thaxtons, who recently moved from Ohio to Kentucky, were involved in an accident in Kentucky. The Thaxtons presented their license to the investigating officer at the scene, who then recorded their Ohio address on the police report.

Thaxtons continued to renew their drivers' license in Ohio after they moved to KY. The corvette in question had a OH license plate. Mr. Thaxton, who operated a car dealership in OH, would stay there a couple of days a week, but would stay in KY when the dealership was closed. The Thaxtons procured the a OH policy through an OH agent for their vehicles. Their auto policy had a choice of law provision noting that OH law governs. Ms. Thaxton procured a KY policy for her business from an agent in KY. The KY policy lists a KY P.O. Box. The Thaxtons later amended their complaint to reflect that they are residents of KY.

In deciding that OH law governs, the court relied on the following:

> Here, Thaxton entered into an insurance contract in Ohio which makes specific reference to Ohio law. The 2000 Corvette covered by the policy was registered and licensed in Ohio, and Thaxton represented to Allstate the vehicle would be garaged and primarily used in Ohio. The expectation of the parties as to the principal location of the insured risk is clearly Ohio. Restatement § 193. While Thaxton obviously disagrees with this assessment, even a cursory reading of the policy indicates Allstate's belief it was insuring an Ohio vehicle against risks primarily occurring in Ohio. Unfortunately for Thaxton, the rule of law is clear and well-settled and cuts against their position.

> Ohio clearly had a significant relationship with the parties and the insurance transaction at issue here. Thus, Ohio law should control absent some compelling reason to the contrary. (citation omitted) No such reason has been presented. Apart from Thaxton providing Allstate with a Kentucky post office box mailing address, all actions related to negotiating, contracting and performing the insurance transaction occurred in and concerned Ohio.

*4.

## Conclusion

It is my opinion that although a conflict of laws exists, the public policy exclusion would not apply and Connecticut law will govern the UIM coverage conflict.


If you have any questions at all, please don't hesitate to contact me.


Best,

Enante

Enante Darout | Associate Counsel | Claim Legal Liability
Licensed in PA & NJ
Travelers
New Jersey Claim Center

TRAV_000216