UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| LAURA N. WOODS, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STANDARD FIRE INSURANCE ) <br> COMPANY, ) <br> ) <br> ) <br> Defendant. ) | NO. 5:18-CV-658-JMH-MAS |

**MEMORANDUM OPINION AND ORDER**

The most recent dispute between the parties raises two issues concerning Plaintiff Laura Woods's ("Woods") proposed deposition of Defendant Standard Fire Ins. Co. ("Standard Fire"): (1) whether Standard Fire can and has properly designated prior deposition testimony in lieu of producing representatives for certain FED. R. CIV. P. 30(b)(6) topics and (2) whether certain topics are vague and impose an undue burden on Standard Fire. The Court has reviewed the briefing on the issues. [Docket Entry ("DE") 122, 130, 131, 132]. As discussed below, except for a single deposition topic, the Court grants Standard Fire's motion for a protective order.

**I.   RELEVANT BACKGROUND**

The general dispute between the parties is well documented by the Court. [*See*, *e.g.*, DE 40, 63, 89, 105, 107]. Woods was involved in an automobile accident and asserted an underinsured motorist ("UIM") claim against Standard Fire. The claim presented a choice-of-law question not addressed in the insurance contract. Standard Fire, based upon a coverage opinion, applied Connecticut law and, pursuant to that law, applied off-sets to the UIM coverage. Woods filed suit

1

for breach of contract (Counts I and II), violation of the Kentucky Motor Vehicle Reparations Act (Count III), common law bad faith (Count IV), and violation of the Unfair Claims Settlement Practices Act (Count V). Judge Hood granted partial summary judgment in this case in favor of Woods, resolving Counts I and II (the so-called "contractual claims"), and lifted the stay permitting discovery on Counts III through V (the "bad faith claims" or "extracontractual claims").

During fact discovery for the bad faith claims and after a long-litigated fight, Woods was permitted to depose several individuals with Standard Fire, including the following:

- Enante Darout: in-house lawyer and author of the coverage opinion;
- Patricia Allen: in-house lawyer responsible for overseeing Darout's work on the coverage opinion;
- Huldah Green: claims adjuster assigned to Woods's case
- Chris Pencak: claims manager for Standard Fire.

Woods also sought, unsuccessfully, to seek the depositions of Patricia Allen and Katie Roh, two other in-house lawyers with Standard Fire. [DE 105].

Woods has now tendered to Standard Fire a FED. R. CIV. P. ("Rule") 30(b)(6) deposition notice inclusive of several topics. Topics relevant to the current dispute are as follows:

1. Decision by Standard Fire (H. Green) to apply $60,000 setoffs purportedly leaving only $40,000 in UIM benefits remaining on or about January 18, 2017;[1]

3. Decision by Standard Fire (D. Midkiff) to assign Parsons's request for legal advice and response to the Woods's coverage letter to P. Allen;

4. The selection of E. Darout to review and respond to the Woods's coverage letter;

---

[1] Although the notice from Woods references January 18, 2018, Standard Fire believes this is a typographical error as the documents reflect a date of January 18, 2017. In her response, Woods does not address this possible error, but does use the date of January 18, 2017. A review of the relevant deposition testimony supports that the correct date is January 18, 2017, not 2018. Thus, the Court will refer to January 18, 2017 as the relevant time period in this topic.

2

5. The decision to apply $61,000 setoffs purportedly leaving only $39,000 in UIM benefits remaining on or about December 6, 2018;

7. The decision to require Woods to sign a release as a condition precedent to payment of the full $100k benefit;

8. The decision to pay Woods $100,000 in UIM benefits after Woods rejects the release request on or about October 2, 2019;

9. Any and all defenses or arguments of SFIC set forth in any of its court filings herein;

10. Any of [Standard Fire's] responses to written discovery served by Woods herein; and

11. All documents produced by or relating to SFIC herein, including records custodian testimony, if necessary, to authenticate and admit any documents.

[DE 122-2, Page ID# 1055-58].

Standard Fire, in response to topics 1 and 3-8, sought to designate individual deposition testimony in lieu of producing an organizational representative acknowledging Standard Fire would be fully bound by the designated testimony. As for topics 9-11, Standard Fire objected to these topics as overly broad, unduly burdensome, and disproportionate to the needs of the case.

## II. ANALYSIS

Rule 30(b)(6) permits a party to notice the deposition of an organization if the requesting party "describe[s] with reasonable particularity the matters for examination." Upon receipt of the list of matters or topics, the organization is then tasked with producing a witness "knowledgeable about the subjects described in the notice and to prepare the witness or witnesses to testify not simply to their own knowledge, but the knowledge of the corporation." *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-CV-345-S, 2014 WL 11152378, at *12 (W.D. Ky. Apr. 3, 2014). In

3

the end, "[t]he testimony of a Rule 30(b)(6) witness represents the knowledge of the corporation and presents the corporation's 'position' on the topic." *Alvey v. State Farm Fire & Cas. Co.*, No. 5:17-cv-00023-TBR-LLK, 2018 WL 826379, at *3 (W.D. Ky. Feb. 9, 2018).

A. **STANDARD FIRE IS PERMITTED TO DESIGNATE FACT WITNESS TESTIMONY IN LIEU OF DESIGNATING AN ORGANIZATIONAL REPRESENTATIVE.**

The first issue before the Court is whether a party may designate or adopt testimony from fact witness in lieu of producing a representative in response to a Rule 30(b)(6) deposition notice. The courts that have addressed this issue have overwhelmingly permitted such a practice. *See, e.g.*, *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121-22 (E.D. Mich. 2019) ("[A] party may avoid presenting a Rule 30(b)(6) witness if, when responding to a deposition notice, the party clearly states that it intends for its employees' prior deposition testimony to represent the testimony of the corporation. . . . Other rules of discovery require a court to consider whether a Rule 30(b)(6) deposition would be cumulative, duplicative, unreasonably burdensome, and disproportionate to the needs of the case."); *Majestic Bldg. Maint., Inc. v. Huntington Bancshares, Inc.*, No. 2:15-cv-3023, 2018 WL 3358641, at *12 (S.D. Ohio July 10, 2018) (explaining that when clearly communicated prior to a Rule 30(b)(6) deposition, an organization may designate prior testimony if the testimony is sufficiently on point to make a subsequent deposition superfluous); *Prosonic Corp. v. Stafford*, No. 2:07-cv-803, 2008 WL 2323528, at *4 (S.D. Ohio June 2, 2008) (holding a "party may . . . successfully argue that all or a portion of the subject matter of such a deposition has already been addressed and that prior depositions may be deemed to be the organization's response"); *EEOC v. Boeing Co.*, No. 05-cv-3034, 2007 WL 1146446, at * 2-3 (D. Ariz. April 18, 2007) (acknowledging that a corporate deponent may, in response to a 30(b)(6) notice, designate prior depositions as responsive and offer to be bound by the testimony given in those depositions in lieu of having to produce the same witnesses to answer the same questions again). *Cf. Tri–State*

*Hosp. Supply Co. v. United States*, 226 F.R.D. 118 (D.D.C. 2005) (concluding that the issue of duplication is usually no reason to prevent the 30(b)(6) deposition from going forward, and that any issues of duplication or unnecessary expenditure of time can be addressed once the deposition has been taken).

From this jurisprudence, the Court has gleaned the following rule. Designating prior witness testimony in lieu of producing an organizational representative in response to a Rule 30(b)(6) deposition notice is permitted if: (1) the organization timely communicates the designated testimony to the noticing party to permit a review of the designations;[2] (2) the designated testimony addresses the requested topic(s); and (3) a deposition of an organizational representative would be unreasonably duplicative, cumulative, and disproportionate to the needs of the case. In other words, is the designation timely and on topic rendering another deposition superfluous?

To see how this plays out, the Court examines *White v. Wal-Mart Stores E., LP*, No. 5:18-cv-34-TBR-LLK, 2018 WL 5083891 (W.D. Ky. Oct. 18, 2018). There, Wal-Mart sought to designate the testimony of two previously deposed witnesses as an alternative to producing organizational representatives under Rule 30(b)(6) on several topics. At the outset, the court in *White* agreed that Wal-Mart could make the designations and that the designations were made timely. The court then turned to whether those designations were satisfactory. For the first two topics, the court found the designated testimony "fully developed" the topics, and "Wal-Mart ha[d] met its burden in showing that preparing a 30(b)(6) corporate representative to prepare and testify to these two inquiries is unreasonably duplicative and cumulative." *Id*. at *4. Meanwhile, White was unable identify any facts or lines of questioning that would differ when deposing an organizational representative. But for the later topics, the court rejected Wal-Mart's designation

---

[2] Woods does not contest that Standard Fire timely provided notice of its designations.

because the witnesses were "unfamiliar" with the topics. While the witnesses were asked about the topics, the witnesses possessed no responsive information. "Plaintiff is entitled to testimony from a Rule 30(b)(6) witness who is educated about this material and speaks on behalf of Wal-Mart." *Id*. at *5.

In this case, both Woods and Standard Fire generally agree with the Court's framework. [DE 130, Page ID# 1549 (The test is "whether the prior testimony is **_sufficiently on point to make subsequent deposition testimony superfluous_**" (internal citation omitted; emphasis in original); DE 122-2, Page ID# 1045-1046 (Standard Fire arguing "that requiring a corporation to produce the same witnesses to address the same topics to answer the same questions (again) would be unreasonably duplicative and cumulative and not proportional to the needs of the case")].

Undaunted, Woods raises several policy arguments cautioning against application of the rule. [DE 130, Page ID# 1549-53]. Many of these policy arguments, however, are addressed by the test outlined by this Court. For example, Woods claims that such designation permits "bandying" "by which employees of a company are deposed in turn but each disclaims knowledge of facts that are clearly known to persons in the organization and thereby to it." [DE 130, Page ID# 1550 (quoting Advisory Committee Notes 1970)]. Yet, as exemplified in *White*, such "bandying" would not be permitted because an organizational representative would not be duplicative or cumulative when the fact witnesses were unprepared to address an issue of organizational knowledge. *White*, *supra* at *5. Or, if Woods specifically identifies alternative lines of questioning that were not addressed in the designated testimony, then, again, the

organizational deposition would not be superfluous.³ Also, if Woods is able to identify other testimony about the topic that Standard Fire omitted in its designation that addresses different aspects of or contrary testimony on the topic, then Standard Fire's designation provides no efficiency and would appear to be gamesmanship. The Court would also reject that act, if proven. In the end, the test articulated by the Court above is not done in spite of Woods's numerous concerns, but created in a manner to both address those concerns such that Woods may fully and fairly take discovery while also seeking to avoid the inefficiencies of duplicative discovery that Rule 26 so cautions against.

### Topic 1: Decision by Standard Fire (H. Green) to apply $60,000 setoffs purportedly leaving only $40,000 in UIM benefits remaining on or about January 18, 2017.

For this topic, Standard Fire seeks to designate certain testimony from Huldah Green ("Green"). As mentioned above, Green served as a technical specialist or claims adjuster for Standard Fire and made the decision in January 2017 to apply a $60,000 setoff to Woods's UIM benefits. The designated testimony of Green is an examination by Woods's counsel about that decision, how Green came to make that decision, the documents Green believed supported that decision, and the basis for that decision. The Court finds that Standard Fire's designation both covers the designated topic and additional testimony appears cumulative.

Woods counters that Green often answered that she either did not know the answer or did not remember the responsive information. Per Woods's count, Green did that nearly fifty times. [DE 130, Page ID# 1554]. Woods glaringly omits that these occurrences are rarely present during

---

³ The Court, however, will not entertain just a vague notion that counsel would have asked questions differently. As the court in *Edwards* cautioned, an organizational deposition should not be used "as a catch-all technique to reexamine at the end of discovery the universe of information an adversary has produced during the discovery period ... so that the burden on Defendant of designating and preparing a witness would almost certainly outweigh the benefit to Plaintiff." *Edwards*, 331 F.R.D. at 121. Woods must specifically identify the alternative line of questions it would have asked.

the designated sections of Green's deposition, but are contained in other, non-designated testimony. Woods also suggests that other testimony from Green is relevant to the topic and provides those specific cites. Yet, upon review, these additional cites do not provide any information relevant to the topic. For example, Woods seeks to include deposition testimony regarding the police report of the underlying accident, broader policies of how Standard Fire manages its claim process, Woods's status as a Medicaid beneficiary, and other issues. [DE 130, Page ID# 1554-55]. None of these issues go to the "reasonabl[y] particular" issue that Woods herself identified as the UIM setoff decision in January 2017. FED. R. CIV. P. 30(b)(6). Woods also complains that Standard Fire designated portions of its own questioning of Green on the topic, characterizing that as "self-serving." This argument, however, ignores the reality of a deposition. If the Court were to permit Woods to take an organizational representative on this topic, Standard Fire would be fully permitted to question its own representative and elicit the same testimony. Woods's is a making a distinction that has no practical difference.

Thus, Standard Fire's motion is granted as to Topic 1 and the designated testimony of Green will be considered the binding testimony of Standard Fire on this topic.

**Topic 3: Decision by Standard Fire (D. Midkiff) to assign Parsons' request for legal advice and response to the Woods's coverage letter to P. Allen.**

**Topic 4: The selection of E. Darout to review and respond to the Woods's coverage letter**

The undersigned has addressed the background behind these very topics in prior discovery disputes. [DE 105, 63]. In general, the topic focuses on Standard Fire's coverage opinion as requested by Matt Parsons ("Parsons"), Standard Fire's claim adjuster, and authored by Enante Darout ("Darout"), an in-house attorney who was working for Standard Fire via a secondment program. Darout's coverage opinion was written under the guidance of Patricia Allen ("Allen"), a senior in-house attorney. Two other in-house lawyers, Katie Roh ("Roh") and Dawn Midkiff

8

("Midkiff"), were administratively involved in connecting Allen to Darout, but had no substantive involvement in the drafting of the coverage opinion. As the Court detailed in its DE 105 Memorandum Opinion & Order, Woods was permitted to depose both Darout [DE 63] and Allen [DE 105] regarding the drafting of the coverage opinion, but Roh and Midkiff were specifically excluded.

Topics 3 and 4 now seek information from Standard Fire about how and why Midkiff chose to assign Parsons's request to Allen who eventually landed at the door of Darout, the coverage opinion's author. The Court wholly rejects these topics. As the Court has made clear multiple times, Woods is entitled to know why Darout wrote what she wrote. [DE 105, Page ID# 980; DE 63, Page ID# 653; DE 52, Page ID# 592]. The Court has enforced that mantra to the benefit of Woods again and again. [DE 105, Page ID# 980; DE 63, Page ID# 653; DE 52, Page ID# 592]. Yet, the information concerning the internal mechanics of how work is assigned in Standard Fire's legal department in no way relates to the "claims and defenses" of the parties. FED. R. CIV. P. 26. The Court addressed this issue in prohibiting the depositions of Roh and Midkif in its DE 105 Memorandum Opinion & Order.

> The information in the record is that Roh and Midkiff do not have any information about the substance of the coverage opinion. Roh and Midkiff were merely involved in assigning the matter to Allen, who then assigned it to Darout. It appears Roh and Midkiff possess little, if any, knowledge about the coverage opinion, and that there are alternative means to obtain the relevant information: the testimony of Darout and Allen.

[DE 105, Page ID# 980]. Woods was not able to substantiate any relevant knowledge for Roh and Midkif then and there is nothing before the Court from the Woods this time suggesting that has changed. Topics 3 and 4 are nothing more than another attempt to delve into an issue that is both irrelevant to the case and one the Court has already prohibited Woods from obtaining. Accordingly, Standard Fire's motion as to topics 3 and 4 is granted. Standard Fire is not required

9

to designate fact testimony nor produce an organizational witness on topic 3. The Court highly doubts the relevancy of topic 4, but Standard Fire did not object to Woods questioning Allen and Green on this issue, nor did it ask the Court to strike topic 4. The designated testimony of Allen and Green will be considered the binding testimony of Standard Fire on this topic.

### Topic 5: The decision to apply $61,000 setoffs purportedly leaving only $39,000 in UIM benefits remaining on or about December 6, 2018.

Similar to topic 1, topic 5 targets a specific decision by Standard Fire to apply $61,000 in setoffs to the UIM coverage limit as of December 2018. Standard Fire seeks to designate the deposition testimony of Allen and Green. Upon careful review of the designated testimony, Woods's counsel thoroughly questioned both witnesses on this very issue. Woods walks through several documents discussing the December 2018 setoff decision and receives affirmative answers to his questions. Thus, the Court finds that the designated testimony both addresses the given topic, and any additional questioning appears unnecessary.

Wood's response fails to address Allen or Green's testimony specifically as to topic 5, but merely incorporates her arguments as to Allen and Green's testimony on the other topics. Woods then advances two other arguments that both miss the mark. First, Woods suggests that Parsons, an individual Woods elected not to depose, also has specific knowledge on this issue. To be clear, Standard Fire can produce any person as an organizational representative it so chooses; it has no obligation to produce Parsons as its organizational representative. Nor is Standard Fire tasked with producing all representatives who might have knowledge. Simply because Parsons may possess some personal knowledge does not mean Allen and Green's designated testimony does not fully address the topic. Standard Fire has made its designation and nothing about Woods's response suggests the questioning would be different. Second, Woods argues that Darout, when questioned about this topic, could not answer any questions. This argument is lost on the Court.

10

Standard Fire did not designate Darout. Woods is not seeking to counter designate Darout. Woods just seems to rail that Darout lacks knowledge about this topic, and because of that, Woods opposes Standard Fire's designations. The Court fails to understand the injection of Darout into a conversation about Allen and Green.

Standard Fire has carried its burden, and the Court grants its motion on topic 5.

**Topic 7: The decision to require Woods to sign a release as a condition precedent to payment of the full $100k benefit.**

**Topic 8: The decision to pay Woods $100,000 in UIM benefits after Woods rejects the release request on or about October 2, 2019.**

These topics narrowly center around Standard Fire's request for a signed release from Woods in exchange for paying $100,000 in UIM proceeds. Standard Fire has designated certain testimony from Allen in which Woods's counsel asks eleven pages of questions on this topic and receives specific answers from Allen, including addressing the relevant policy provisions, the proposed settlement agreement, internal communications discussing the proposed settlement agreement, and how the issue was ultimately resolved. Once more, the designated testimony addresses the topics at issue, and the Court perceives any additional questions on this issue duplicative.

Like topic 5, Woods argues that the person best able to speak to topics 7 and 8 is Parsons. And like topic 5, the Court has the same response. Just because Woods wishes the organizational representative was Parsons does not make it so. If Woods wants to better understand Parsons's knowledge on any issue, she should take his deposition.

Unlike topic 5, however, Woods does attempt to attack the designated testimony of Allen more specifically. Woods contends that there were questions Allen could not answer, as well as questions about the "whys" of certain policy decisions for Standard Fire on these topics that Woods did not ask. [DE 130, Page ID# 1559]. When the Court reviewed the deposition testimony as

11

cited by Woods, however, the Court could not find the testimony as quoted and suggested by Woods. [DE 130, Page ID# 1559 (citing Allen Depo., 68:8-12 at DE 122-13, Page ID# 1161)]. Rather, in the portion of her testimony designated by Standard Fire, Allen affirmatively answers every single question asked by Woods's counsel, including the question, "Then why was Travelers demanding a release?" [DE 122-13 at Page ID# 1161]. Allen's answers stand in stark contrast to the answers provided by Darout when she was asked about these topics. Darout answered nearly every question with admitted speculation or responding that she did not know the answer. [DE 122-27, Page ID# 1357]. And yet, Woods cites Darout's testimony as evidence that Standard Fire's designation was "cherry picking" favorable testimony. [DE 130, Page ID# 1559]. The Court disagrees. Darout's testimony on these topics, as cited by Woods, provides no value and does not present any different or additional information that would undercut Standard Fire's designation.

Again, Standard Fire has designated testimony that fully addresses the topic identified by Woods and any requestioning of Standard Fire's organizational representative on this topic would be duplicative and disproportionate to the needs of the case. For these reasons, concerning topics 7 and 8, Standard Fire's motion is granted.

### B. WOODS'S PROPOSED TOPICS 9, 10, AND 11 ARE OVERLY BROAD, UNDULY BURDENSOME, AND DISPROPORTIONATE TO THE NEEDS OF THE CASE.

The Court next turns to topics 9, 10, and 11. In its motion, Standard Fire contends such topics are overly broad, unduly burdensome, and disproportionate to the needs of the case. For its response, Woods attempts to narrow the scope of topics 9, 10, and 11.

As discussed at the outset, a Rule 30(b)(6) notice "must describe with reasonable particularity the matters for examination," and the deponent "must testify about information known or reasonably available to the organization." "The test for reasonable particularity is whether the

12

request places the party upon reasonable notice of what is called for and what is not." *Alvey v. State Farm Fire & Cas. Co.*, No. 5:17-cv-23-TBR-LLK, 2018 WL 826379, at *7 (W.D. Ky. Feb. 9, 2018). "Some courts construe 'reasonable particularity' as requiring a notice of deposition under Rule 30(b)(6) to identify topics with 'painstaking specificity[,]'" but that is not the case here. *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019) (citing *Georgia-Pac. Consumer Prod., LP. v. NCR Corp.*, No. 1:11-CV-483, 2015 WL 11236844, at *1 (W.D. Mich. Feb. 23, 2015)). Rather, topics 9, 10, and 11 are so expansive and vague that even Woods admits that topics 9, 10, and 11 are "somewhat broad". [DE 130, Page ID# 1553].

In essence, topics 9, 10, and 11 serve as "as a catch-all technique to reexamine at the end of discovery the universe of information an adversary has produced during the discovery period." *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 99 (D.D.C. 2017). Topics 9, 10, and 11 are, as Standard Fire rightly contends, overly broad, unduly burdensome, and disproportionate to the needs of the case. There is simply no way to designate a person or persons who could reasonably prepare to speak and bind an organization as to every court filing, discovery response, and document produced in a litigation. When "Rule 30(b)(6) is intended to streamline the discovery process," pursuing topics 9, 10, and 11 would serve the opposite. *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 70 (D.D.C. 1999).

Nevertheless, Woods, in her response, offered some alternatives to limit the scope and breadth of topics 9, 10, and 11. The Court examines each below.

### Topic 9: Any and all defenses or arguments of SFIC set forth in any of its court filings herein.

For topic 9, Woods proposes to only target information related to eleven paragraphs and four affirmative defenses set forth in Standard Fire's Answer to the Complaint [DE 4], a far more

13

targeted approach than all the pleadings in the litigation. [DE 130, Page ID# 1553].[4] Even with that modification, Standard Fire still objects arguing that such information contained in those paragraphs are decisions made by counsel, not Standard Fire. [DE 132, Page ID# 1611 (citing *Fox v. Amazon.com, Inc.*, No. 3:16-cv-3013, 2017 WL 9476870, at *5 (M.D. Tenn. Sept. 21, 2017)].

At the outset, the Court notes that there is a split in authority on this issue. *See*, *e.g.*, *Radian Asset Assur., Inc. v. Coll. of the Christian Bros. of N.M.*, 273 F.R.D. 689, 691 (D.N.M. 2011) ("Courts have split whether to allow parties to use 30(b)(6) depositions to explore facts underlying legal claims and theories."). Some courts have precluded parties from using Rule 30(b)(6) depositions to probe legal claims and theories. *See*, *e.g.*, *Fox v. Amazon.com, Inc.*, No. 3:16-cv-3013, 2017 WL 9476870, at *5 (M.D. Tenn. Sept. 21, 2017) ("[T]he decision to admit or deny the allegations in the complaint is a decision made by counsel at the time the answer was filed. That decision by counsel is privileged."); *In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (finding that a party's attempt to discover facts supporting a defendant's denials and affirmative defenses "implicate[d] serious privilege concerns"). The rationale supporting this position is, as Standard Fire argues, that such questioning may infringe upon or possibly reveal attorney impressions.

Conversely, other courts have permitted such deposition topics to the extent that the underlying facts, not attorney impressions, are at issue. *See*, *e.g.*, *Yerkes v. Weiss*, No. CV 17-2493 (NLH/AMD), 2019 WL 12056384, at *6 n.2 (D.N.J. Sept. 30, 2019) (analyzing propriety of Rule 30(b)(6) questions using standards for Rule 33 contention interrogatories); *Dennis v. United States*, No. 3:16-cv-3148-GBN, 2017 WL 4778708, at *9 (N.D. Tex. Oct. 23, 2017) (explaining

---

[4] Specifically, Woods seeks information for paragraphs 8, 11, 12, 14, 15, 19, 20, 22, 23, 46, and 47 in the Answer to the Complaint as well as the third, fourth, fifth, and seventh affirmative defenses.

14

that contention interrogatories seeking the factual basis of a denial is not protected work product, and that "[t]he same analysis applies to a Rule 30(b)(6) deposition topic seeking the identification of facts"); *see also Radian Asset Assur., Inc. v. College of the Christian Bros. of New Mexico*, 273 F.R.D. 689, 692 (D. New Mexio 2011) (stating that "allow[ing] parties to craft [Rule] 30(b)(6) inquiries . . . advances the policy underlying the rules favoring disclosure of information").

The Court finds the rationale of the latter cases more persuasive. Specifically, the Court struggles to square the fact that such inquiries are permitted as contentious interrogatories under Rule 33 but would not be permitted, as Standard Fire argues, in a Rule 30(b)(6) deposition. The court in *Erickson v. City of Lakewood*, No. 1:19-cv-2613, 2021 WL 4947231 (D. Colo. Sept. 23, 2021), recently explained:

> "[T]he use of Rule 30(b)(6) depositions for the purpose of obtaining the factual bases for a defendant's asserted position statements or affirmative defenses is not novel." Contention interrogatories seeking the factual basis of a claim or defense are expressly permitted by Rule 33 of the Federal Rules of Civil Procedure. The court cannot conclude that questions permitted in other forms of discovery would be per se improper if raised during a deposition.

*Id*. at *5 (internal citations omitted). Stated another way, "[a]s courts have held contention interrogatories seeking the factual bases for allegations would not encroach on protected information, . . . it is not apparent how the same information would be otherwise unavailable through questions posed to a deponent in the course of a deposition." *Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 34 (D. Conn. 2003).

Woods is permitted to seek **factual** information concerning paragraphs 8, 11, 12, 14, 15, 19, 20, 22, 23, 46, and 47 in the Answer to the Complaint as well as the third, fourth, fifth, and seventh affirmative defenses. To further explain, Woods may inquire about what facts underlie certain denials or what facts support certain affirmative defenses. Standard Fire's motion for topic 9, as modified by Woods and explained above, is denied.

**Topics 10: Any of [Standard Fire's] responses to written discovery served by Woods herein.**

**Topic 11: All documents produced by or relating to SFIC herein, including records custodian testimony, if necessary, to authenticate and admit any documents.**

For the final two topics, Woods did not so much narrow the topics or offer specific alternatives but proposed that she would notify counsel for Standard Fire seven days prior to the Rule 30(b)(6) deposition what Woods would include for these topics. [DE 130, Page ID# 1553-54]. Woods also proposes to include "the matters raised in DE 101" in the scope of topic 10. [DE 130, Page ID# 1553-54]. This adds little specificity, as "the matters raised in DE 101" include a 12-page brief and 15 exhibits totaling 85 pages.

The Court fully rejects Woods's approach. The Court does not wish to kick the proverbial can down the road until the eve of the deposition. The time to provide alternatives to topics 10 and 11 were during the meet and confer between counsel, during the teleconference with the Court, or in Woods's written response to Standard Fire's motion. Woods was on notice of the concerns relevant to topics 10 and 11, and she elected not to offer fulsome resolutions. Accordingly, Standard Fire's motion as to topics 10 and 11 is granted.

### III. CONCLUSION

Accordingly, for the reasons stated herein and the Court being sufficiently advised, the Court **ORDERS** the Standard Fire's Motion for Protective Order [DE 122] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1) For topics 1, 4, 5, 7, and 8, Standard Fire's deposition designations in lieu of producing an organizational representative is permitted as the designations were made timely, fully address the topic, and further questioning of an organizational representative would be unreasonably duplicative, cumulative, and disproportionate to the needs of the case;

16

2) For topic 3, Woods is prohibited from seeking an organizational deposition as this topic is irrelevant and concerns facts the Court has previously excluded Woods from discovering [DE 105];

3) For topic 9, Woods is permitted to seek factual information concerning paragraphs 8, 11, 12, 14, 15, 19, 20, 22, 23, 46, and 47 in the Answer to the Complaint as well as the third, fourth, fifth, and seventh affirmative defenses; and

4) For topics 10 and 11, Woods is prohibited from seeking an organizational deposition as those topics are overly broad and disproportionate to the needs of the case.

The undersigned enters this Memorandum Opinion and Order pursuant to 28 U.S.C. § 636(b)(1)(A). Within fourteen (14) days after being served with a copy of this Memorandum Opinion and Order, either party may appeal the decisions to Judge Hood pursuant to § 636(b)(1)(A) and FED. R. CIV. P. 72(a).

Entered this 7th day of March, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge