```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF KENTUCKY
                   CENTRAL DIVISION at LEXINGTON
```

| | |
|---|---|
| LAURA N. WOODS, ) | |
| ) | |
| Plaintiff, ) | Civil Case No. |
| ) | 5:18-cv-658-JMH |
| v. ) | |
| ) | **MEMORANDUM** |
| THE STANDARD FIRE INSURANCE ) | **OPINION & ORDER** |
| CO., doing business as ) | |
| Travelers, ) | |
| ) | |
| Defendants. ) | |

```
                   **   **   **   **   **
```

Laura Woods was in a two-vehicle accident in Woodford County, Kentucky on December 18, 2016, while driving a vehicle belonging to her father, Dawson Newberry, a Connecticut resident. After settling with the other driver's insurance company, USAA, Woods then sought under-insured motorist ("UIM") benefits from the insurance policy that was procured by Newberry. This policy was procured in Connecticut from the Defendant, Standard Fire Insurance Company, a Connecticut insurance company. The subject insurance policy did not contain a choice of law provision, and included a setoff provision, which required that any benefits received from other sources be deducted or set off from the amount of UIM benefits that may be recovered under the policy. As such, Standard Fire

offered to provide UIM benefits to Woods, but only after setting off the amount that Woods had already recovered from other sources.

Woods eventually filed suit, alleging among other things, that Standard Fire acted in bad faith in resolving the claims. Standard Fire has moved for summary judgment in its favor, arguing that there is no genuine issue as to whether it acted in bad faith. For the reasons outlined below, the Court GRANTS Defendant's Motion for Summary Judgment (DE 138).

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

On December 18, 2016, Plaintiff Laura Woods, a Kentucky resident, was operating her father's 1998 Toyota Tacoma, when she was seriously injured in a two-vehicle collision in Kentucky. (DE 1-2, Pg. ID. 9). As a result of the accident, she incurred expenses in excess of $250,000. (DE 9-1 at 2, Pg. ID 115). Joshua Eaves, the other driver, was insured by USAA, and Woods settled her personal injury claim with the insurance company for $50,000. (DE 8-1 at 2, Pg. ID 54).

Woods' father, Dawson Newberry, was a Connecticut resident (*id*.), and his vehicle was covered by an insurance policy written by Standard Fire. (*Id*.). Standard Fire is incorporated in Connecticut and has its principal place of business in Hartford, Connecticut. (DE 1 at 2, Pg. ID 2). Newberry was the named insured on the subject insurance policy. (*See* DE 8-5). Woods is not a named

insured or a designated driver under the Standard Fire policy. (*See id.*). Even so, the Standard Fire policy territory included the "United States, its territories or possessions; Puerto Rico; or Canada." (DE 8-5 at 16, Pg. ID 193).

In September 2018, Woods sought $100,000 from Standard Fire, which was the policy limit for UIM benefits under the Standard Fire policy. (DE 9-1 at 3, Pg. ID 116). In response, Standard Fire offered to settle Woods's claim for $39,000 based on a limit of liability or setoff provision in the policy. (DE 9-4). This relevant provision states that: "The Limit of liability will be reduced by all sums: [] Paid to 'insureds' because of the 'bodily injury' by or on behalf of persons or organizations who may be legally responsible." (DE 8-5 at 24, Pg. ID 201). The policy further states that:

> [] No one will be entitled to receive duplicate payments for the same elements of loss under this Coverage Section and:
>
> 1. Any other Coverage Section of part of this policy; or
>
> 2. Any other personal auto policy issued to you by us or any of our affiliates.

(*Id.*). The policy contains no choice-of-law provision. But, Woods argued that Kentucky law applied, while Standard Fire argued that Connecticut law applied.

Woods refused Standard Fire's offer of $39,000 and filed suit in Fayette Circuit Court, seeking a declaration of benefits under the policy and bringing the following five claims: breach of contract (Counts I and II); violation of the Kentucky Motor Vehicle Reparations Act (Count III); common law bad faith (Count IV); and violation of the Unfair Claims Settlement Practices Act (Count V). She also sought punitive damages (Count VI). (DE 1-2).

Once the matter was transferred to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, the parties agreed to bifurcate the bad faith claims from the other claims in the action and to stay discovery until the Court could resolve the parties' anticipated motions for summary judgment on the amount of UIM benefits payable under the policy. (*See* DEs 6 & 7). The parties promptly filed their respective motions (DEs 8 & 9). On August 14, 2019, the Court issued a ruling denying Defendant's Motion for Summary Judgment (DE 8), and granting Plaintiff's Partial Motion for Summary Judgment (DE 9). (DE 15). The Court concluded that Kentucky law applied to the interpretation of the Standard Fire policy at issue, and thus, the setoff provision in the policy was invalid. (*Id.*). In a separate Order, the Court clarified that Woods would be entitled to recover up to the policy limit in UIM benefits, assuming that she was able to prove entitlement to such damages. (DE 17). The Court stated that, while this resolved Count

1, in favor of Woods, the Court was unable to make a definitive finding on Counts II and III.

The parties have engaged in fact and expert discovery for nearly three years. Standard Fire has moved for summary judgment (DE 138). Standard Fire submits that, its reliance on their lawyer's coverage analysis and the final opinion, when applying Connecticut law— to their Connecticut-issued— policy cannot constitute bad faith. Woods vehemently opposes, arguing that the issues presented are plainly for a jury to decide. For the reasons explained below, the Court disagrees and finds that summary judgment in favor of the defendant is the proper result.

## II. LEGAL STANDARD

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted). The Court construes the facts in the light most favorable to the

nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*. (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir. 1987)). Notwithstanding, the non-moving party is required to do *more* than simply show there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

Finally, in a diversity action, the Court applies the substantive law of the state in accordance with the applicable decisions of its highest court. *Pedigo v. UNUM Life Ins. Co. of Am.*, 145 F.3d 804, 808 (6th Cir. 1998)(internal citations omitted).

### III. ANALYSIS

Counts 2-6 of the Plaintiff's Complaint are currently pending before the Court. The Court has not yet definitely ruled on the contents of Count 2 of the Complaint, so Standard Fire seeks summary judgment as to that claim. Standard Fire further seeks summary judgment on the bad faith counts (Counts 4-6), arguing that the evidence fails to show any outrageous conduct and otherwise fails to show two essential elements of Woods' bad faith claim. Standard Fire argues that Count 3 should be dismissed

because it is duplicative of Counts 4-6, and because Woods cannot prove that the KMVRA was violated.

For complete thoroughness, the Court discusses each claim, individually, below.

**A. Breach of Contract- UIM Benefits (Count 2)**

The Complaint alleges that Standard Fire was obligated to pay Woods "the extent of its per person UIM policy limits …, or $100,000" because the damages sustained exceeded the other negligent driver's policy limit with USAA. (DE 1-2, Pg. ID 13). However, after the Court issued its August 2019 ruling, granting the Plaintiff's Motion for Partial Summary Judgment and determining that the setoff provision in Standard Fire's policy was invalid under Kentucky law, Standard Fire paid Woods the full policy limits of $100,000; Defendant chose to proceed with the payment even though Woods rejected its offer to sign a release to settle the UIM claim. (DE 122-13, Pg. ID 1160-1161).

As a result of its payment, Standard Fire argues that no "justiciable controversy regarding Count Two" exists, as the policy limit in UIM coverage has been fully paid. (DE 138-1, n.2, Pg. ID 1645). Woods did not acknowledge Standard Fire's argument in her response (DE 148). However, because the defendant is correct that no live controversy exists regarding this claim, the Court will grant summary judgment to Standard Fire as to Count II.

**B. Common Law Bad Faith (Count 4)**

Woods asserts a common law bad faith claim alleging that Standard Fire was obligated to pay the UIM policy limits of $100,000, and that it acted with reckless disregard and with ulterior motives when determining that she was not entitled to the full amount. (DE 1-2, Pg. ID 14-15).

As set forth in *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993), "[a] single test under Kentucky law exists for the merits of bad-faith claims, whether brought ... under common law or [by] statute." *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 527 (6th Cir. 2006). The parties, at least on this, appear to agree that this is "the leading case on 'bad faith' in Kentucky" and "the culmination of the development of 'bad faith liability in [Kentucky] jurisprudence." *Id*. (quoting *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 99 (Ky. 2000)).

A claimant alleging bad faith against an insurance company must prove three elements in order to prevail:

> (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Wittmer*, 864 S.W.2d at 890.

"The issue of the defendant's bad faith turns largely on the *inferences to be drawn from the evidence* regarding the defendant's motive [in handling the claim]." *Estate of Riddle v. Southern Farm Bureau Life Ins. Co.,* 42 F.3d 400, 408(6th Cir. 2005) (emphasis added). Before the cause of action [for bad faith] exists in the first place, there must be evidence sufficient to warrant punitive damages." *Wittmer*, 864 S.W.2d at 890; *see also by Hollaway v. Direct Gen. Ins. Co. of Miss.*, 497 S.W.3d 733, 739 (Ky. 2016) (noting that a bad faith claim in Kentucky is essentially a punitive action). The Sixth Circuit has described this prerequisite as a "high threshold standard that requires evidence of intentional misconduct or reckless disregard of the rights of an insured or a claimant by the insurance company that would support an award of punitive damages." *Phelps v. State Farm Mutual Auto. Ins. Co.*, 736 F.3d 697, 703 (6th Cir. 2012) (internal quotation marks and citations omitted).

Standard Fire first argues that Woods has not demonstrated the existence of any "conscious wrongdoing or that it otherwise engaged in outrageous conduct" (DE 138, Pg. ID 1658). Therefore, Woods cannot demonstrate that punitive damages are warranted, and that Standard Fire's conduct in denying Woods' claim was outrageous or recklessly indifferent to her rights. *See Hollaway,* 497 S.W.3d at 737-38.

The *Wittmer* elements at issue here pertain to whether Standard Fire "knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Wittmer*, 864 S.W.2d at 890. Woods argues that Standard Fire assumes no evidence in her favor as the non-moving party, and that serious material, factual disputes preclude summary judgment. But, a review of the pertinent facts is key here.

As stated above, Woods' attorney sent Standard Fire a demand package on September 14, 2018. The assigned claim professional, Paul Galanski, reviewed Woods' claimed damages from the car accident and observed that the damages exceeded the policy's limit of $100,000 in UIM coverage. (*See* DE 138-11 at 17-20). He observed that the policy was issued in Connecticut, even though the accident occurred in Kentucky. (*Id.*). On October 5, 2018, Mr. Galanski sent an email to Woods' counsel, offering Standard Fire's offer of $39,000. (DE 9-4, Pg. ID 171). The offer was "inclusive of all medical bills, lost wages, out of pocket expenses and/or liens." (*Id.*). Mr. Galanski's claim note explained the apparent Kentucky-Connecticut implication, and expressly cautioned that further research would be required if this case were to be tried in Kentucky. (*See* DE 122-23, Pg. ID 1295).

On October 30, 2018, counsel for Woods sent Mr. Galanski a 15-page later, responding to the settlement offer and explaining

Page **10** of **16**

that Kentucky law applied to the contract— not Connecticut law—and per Kentucky law, offsets would not be permitted to the UIM coverage limit. (DE 13-1). After receiving this letter, Standard Fire reassigned the UIM claim to another individual, Matt Parsons, who was involved in the unit handling Kentucky UIM claims. (DE 122-22, Pg. ID 1211). The next day, Mr. Parsons sent his manager a formal request for legal advice. (DE 122-30, Pg. ID 1420). Upon receipt, Mr. Parsons' manager, Chris Pencak, then forwarded the referral form to in-house attorney Enante Darout. (Id., Pg. ID 1215). Ms. Darout testified that she spent 20-25 hours researching the issue over the course of two weeks. (DE 122-27; Pg ID 1362). During such time, she also consulted with another in-house attorney, Patricia Allen. (DE 122-13, Pg ID 1154).

On November 28, 2018, Darout sent her coverage opinion to Mr. Parsons. (DE 122-31; Pg. ID 1422-1425). In sum, she concluded that Connecticut law would apply. At her deposition, Ms. Darout testified that she did not receive any financial incentive by reaching this conclusion, nor was she told what conclusion to reach. (DE 122-27; Pg. ID 1372). She further stated that she had no ulterior motives in reaching this assessment. She acknowledged the opposing case law, which applied Kentucky's public policy exception, but ultimately stated that the facts of the case were

incongruous to the facts of those cases. (*See* DE 122-27; Pg. ID 1350, 1370; DE 122-19, Pg. ID 1196).

On December 6, 2018, Mr. Parsons sent an email to Woods' counsel stating that the offer of $39,000 still stands, as the research had led them to believe that Connecticut law governed. (DE 122-26, Pg. ID 1325). However, by this point, Woods had already filed suit. (DE 1-2. Pg. ID 8).

Woods contends that material factual disputes exist; but, the Court cannot find any. In short, the opinion letters from Woods and Standard Fire differed on which state's law applied to the controversy. A genuine dispute existed. This is plainly not sufficient to warrant bad faith. There is no evidence that Standard Fire engaged in conscious wrongdoing or was somehow reckless with regard to whether Connecticut law applied to the policy.

Woods attempts to dissuade the Court from the evidence at hand by pointing to Darout's qualifications. Such issues are not before the Court. Moreover, being a poor researcher, or a poor legal scholar, at that, cannot constitute evidence of bad faith. The fact that Woods' expert reached a different conclusion is not concrete evidence of bad faith. Because of the genuine dispute regarding the law applicable to the coverage question, the amount of available UIM coverage was fairly debatable. The fact that the Court ultimately agreed with Woods— that Kentucky law applied—

also does not bolster her position indicating the presence of bad faith.

The Supreme Court "recognized in *Wittmer*, … that to find bad faith there is a threshold, and the evidence must be sufficient to establish that a tort has occurred." *Guaranty Nat. Ins. Co. v. George*, 953 S.W.2d 946, 949 (Ky. 1997). Like the Supreme Court in *George*, "[w]e are of the opinion that [the insurer's] conduct in this case does not meet that threshold and rise to the level required to sustain an action for bad faith." *Id.* The Court finds for Standard Fire here.

**C. Violation of the KUCSPA (Count 5)**

Woods alleges several violations of Kentucky's Unfair Claims Settlement Practices Act (KUCSPA), KRS 304.12-230. The Kentucky Supreme Court and the Sixth Circuit regard such a claim as one for statutory bad faith. *See Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 532 (6th Cir. 2006) (citing *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006)). However, in order to sustain a claim under the KUCSPA, a plaintiff "must meet a high threshold standard that requires evidence of 'intentional misconduct or reckless disregard of the rights of an insured or claimant....'" *Phelps*, 736 F.3d at 703. As explained above, Woods has not offered any proof that Standard Fire acted with intentional misconduct, and Woods fails to point to evidence supportive of an

assertion that Standard Fire never intended to fairly negotiate with her. Under Kentucky law, an insurer can reasonably negotiate a claimant's demand. *See Hollaway*, 497 S.W.3d at 739. Simply put, Woods has not meet the high burden to sustain a KUCSPA claim, and summary judgment is appropriate.

### D. Count Six: Punitive Damages (Count 6)

Plaintiff has asked for punitive damages as "a result of [Standard Fire's] wrongful, illegal, and tortious conduct[.]" (DE 1-2, Pg. ID 16). Whether tortious elements exist justifying an award of punitive damages depends first on whether there is proof of bad faith. Because the Court finds that no such bad-faith conduct was present, the Court grants summary judgment to the defendant on this claim.

### E. Violation of the KMVRA (Count 3)

Finally, the Complaint alleges that Standard Fire violated the Kentucky Motor Vehicle Reparations Act (KMVRA) by seeking PIP reimbursement from Woods via UIM setoff. (DE 1-2, Pg. 13-14). Pursuant to the Act, Standard Fire was "required to seek reimbursement of any PIP benefits it paid either from [the other driver] or from his insurer, USAA, not from Woods." (*Id.*, Pg. ID 14). Under Kentucky law, however, the KMVRA provides the exclusive remedy for alleged violations of the Act.

The Kentucky Motor Vehicle Reparations Act ("MVRA") "is a

comprehensive act which not only relates to certain tort remedies, but also establishes the terms under which insurers pay no-fault benefits, and provides for the penalties to which insurers are subjected if they fail to properly pay no-fault benefits." *Couch v. Northland Ins. Co.,* 2007 WL 1610185, *4 (E.D. Ky. May 31, 2007) (citing *Foster v. Kentucky Farm Bureau Mutual Ins. Co.,* 189 S.W.3d 553, 557 (Ky. 2006)). The *Foster* principle "has been followed in subsequent federal and state [cases]." *Sackos v. Geico Ins. Agency, Inc.*, No. 1:11-CV-00072-JHM, 2011 WL 5975293, at *2 (W.D. Ky. Sept. 21, 2011) (collecting cases).

Here, even though Woods has failed to prove the elements of bad faith, she argues that Standard Fire's underlying conduct can serve as an alternative basis for bad faith liability under the KMVRA. (DE 148 at 13). However, case law suggests this is just not true. To the extent Woods that bases her claim of bad faith on Standard Fire's assertion of PIP offsets to UIM coverage, Kentucky law has determined that such a claim cannot be pursued. *Risner v. State Farm Mut. Auto. Ins. Co.*, Civ. Action No. 14-41-HRW, 2014 WL 5431284, at *2 (E.D. Ky. Oct. 23, 2014) (collecting cases) ("This principle is well established in Kentucky and this district."). Standard Fire is entitled to summary judgment on this claim.

## IV. CONCLUSION

A non-moving party is required to do *more* than simply show there is some "metaphysical doubt as to the material facts." *Matsushita*, 475 *U.S. at* 586. Woods offers only speculative arguments, which do not rise to the level of proving bad faith.

For the reasons set forth above, **IT IS ORDERED** that the Defendant's motion for summary judgment (DE 138) is GRANTED. An appropriate judgment will be entered contemporaneously herewith.

This the 7th day of October, 2022.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge